S. M. LOCKHART, Adm'x. v. J. J. BELL.

*Agency—Contract of Purchase—Evidence—Witness.*

1. The defendant bought land of A at execution sale, and contracted to convey the same to another upon payment of price; there are provisions in the contract to the effect that interest is to be paid on bonds first falling due—the vendee to pay expenses of certain litigation—the vendor to have a lien on crops raised on the land to secure payment of the debt. Vendee dies, and the heir, who is also the personal representative, sues for an account and conveyance of title, alleging that purchase money has been paid; *Held* on exceptions to report of referee;

(1) That defendant was properly credited with amount paid for keeping farm in repair and providing for its cultivation, and for certain expenses incident to litigation; nor ought he to be charged with applying crop to payment of interest, as the referee charged him with the whole sum received from that source.

(2) Testimony of a witness to show the agency of A, the defendant in the execution, in effecting the contract of purchase as bearing upon his general agency for vendee in managing the farm, was competent, and the subsequent agreement as to rent, material to show the continuing relation of principal and agent; and the proof in this case sufficient to show the sanction of the principal (intestate) to the agency.

2. A witness offered to prove a fact which occurred out of the presence of, and in no sense a transaction with a deceased person, is not incompetent under section 343 of the Code. It is only when the transaction is between the deceased and the living party, that the statute prohibits the latter from testifying.

(RUFFIN, J., dissenting.)

(*Woodhouse* v. *Simmons*, 73 N. C., 30, cited and approved.)

CIVIL ACTION tried upon exceptions to referee's report at Fall Term, 1880, of NORTHAMPTON Superior Court, before *Graves, J.*

The plaintiff appealed.

*Messrs. T. N. Hill* and *R. B. Peebles,* for plaintiff.
*Messrs. Day & Zollicoffer* and *Mullen & Moore,* for defendant.

SMITH, C. J.   The defendant having purchased at a sale under execution against B. F. Lockhart a tract of land in Northampton, known as the "Deans Plantation," and estimated to contain eight hundred and twenty-six acres, on December 16th, 1871, entered into an agreement with Virginia P. Eaton, the mother of his wife, under their seals for the sale of the same to her at the price of twelve thousand nine hundred thirty-seven dollars and eighty cents, whereof was then paid two hundred dollars in cash, two thousand seven hundred and thirty-seven dollars and eighty cents in a transferred judgment and execution against the same debtor, and the residue in four equal parts secured by her bonds falling due respectively on the first day of January of the next succeeding years and all bearing interest from April 1st of that year, and payable annually.

Upon the full payment of the purchase money, the defendant contracted to convey the estate in the land acquired under the sale and the deed of the sheriff thereafter to be executed.   The agreement contains a provision in these words:

"Now although two of said bonds of $2,500 each fall due before the 1st of January, 1874, the said Bell will not undertake to enter on the premises to claim in any way forfeiture of said V. P. Eaton's claim, if all the said interest is promptly paid and no culpable waste committed until that date.   But nothing is to be understood by this clause to prevent said Eaton's paying any part of the principal."

The covenant also recites that a sum of $1294.27, due under one of the executions, by virtue whereof the sale was made, and belonging to said Bell, is involved in a controversy in the court whence they issued, as to the disposition and apportionment of the moneys in the sheriff's hands, and whatever sum he may receive from that source " he is to allow Mrs. Eaton a credit on the said bond to that amount so received, and as a condition precedent to his making a title as aforesaid, the said Virginia agrees to pay to said Bell all expenses that he may be at in attending the said litigation and in making her title also."

The final cause is as follows: " It is expressly understood and agreed that all of the crops produced upon the said plantation, which may belong to Mrs. Eaton, shall be bound to pay the interest and principal of the debt of J. J. Bell, after the payment of taxes, and the same shall not be disposed of to any person or in any way, except with the consent of said J. J. Bell, until all of his debt is paid in full ; it being the intent of this clause, under all circumstances, to give the said Bell a perfect lien on all the crops or parts of crops produced on said plantation to which Mrs. Eaton shall be in any way entitled."

The vendee died in February, 1876, having made several payments on her indebtedness from crops of cotton raised on the land during her lifetime, and the present plaintiff, her only heir at law, has administered on her estate. B. F. Lockhart died subsequently, the parties having all resided as one family from the date of the contract until interrupted by her death.

The present action is for an account, the plaintiff alleging her belief that the purchase money has all been paid, and for the conveyance of the title to the land.

At spring term, 1878, the following order was entered in the cause: "It appearing to the court that this case involves the taking of an account between the defendant and

the intestate of the plaintiff, it is now by consent referred to Thomas W. Mason to take and report to the next term of the court an account between the plaintiff's intestate and the defendant. It is further agreed that the said reference shall be heard at Weldon on ten days notice."

The referee accordingly proceeded with great care and particularity to take the evidence, documentary and oral, noting such as was objected to and his own rulings upon its admissibility, putting down the obnoxious matter, so that if he erred his adverse rulings could be considered and acted on by the reviewing court. He has also with equal attention and perspicuity found the facts in a series of separate propositions with references to the testimony on which they are based, and stated his conclusions of law as deduced from the facts. We think a word of commenda- tion is due to the referee for the fair, impartial and thorough manner in which his onerous and perplexing labors on the investigation have been performed and reported to the court.

In examining the report we see that he has met at every stage of the hearing, with exceptions to the introduction of evidence, those taken to the report by the plaintiff number- ing near eighty, of which the court sustains sixty-two, over- rules thirteen, and sustains in part, and overrules in part the others.

. The case, accompanying the plaintiff's appeal and con- taining her assignment of errors, presents seven exceptions to the rulings of the court that we are asked to consider and correct. The exceptions are :

1. To the allowance, as a credit to the defendant of the sum of $136.10 paid by him for buildings or repairs upon the plantation, and to tenants for excess in the rent-cotton delivered above what was due, and the sum of $70.30 for bagging and ties used in baling.

2. To the admission of testimony in explanation of an

endorsed credit of $450 on the bonds, interest to the end of the year in which they were executed. This exception is not insisted on in this court and will not be considered.

3. To the receiving of the testimony of M. W. Ransom.

4. To the allowance of attorney's charges and other expenditures, in securing the share of the proceeds of sale under execution, amounting in the whole to the sum of $171.25.

5. To the finding, as a fact, the second contract between the parties for a renting, entered into on August 1st, 1875.

6. To the failure to charge the defendant with the three separate credits of $600 each, endorsed on the bonds, in payment of interest accrued to the beginning of the respective years, 1873, 1874 and 1875.

7. To the reception of the defendant's explanation of the drawing the bonds in form, bearing interest from April 1st preceding the date of their execution on December 16th of the same year.

To these exceptions, omitting the second, we now direct our attention in the order of their enumeration:

1. The equitable estate, the substantive property in the farm vested under the contract in the intestate, and the expenditure complained of, was for her benefit as owner and incurred without objection. In legal effect, it is an appropriation of a portion of the crop to the keeping up the farm, providing for its cultivation, and securing a full product. The excess in the delivered cotton for which the tenants were paid, was a proper deduction from the aggregate sales, enlarged by the addition of so much as belonged to them, for which the intestate's estate has credit. It is but a withdrawal of the excess from the cotton forwarded and sold, and giving it the residue. For the same reason the costs of the material used in baling were a proper deduction.

3. The testimony of M. W. Ransom to show the agency

of Lockhart in effecting the contract of purchase, and as bearing upon his general agency in obtaining and managing the farm for his principal, was both relevant and competent.

4. The contract contains a provision securing to the intestate the benefit of whatever sum the defendant might recover from the sales of the land, and further, that the intestate shall pay to him " *all expenses, that he may be at, in said litigation* and in making her title also." The sums charged were expended in securing the money, with the whole of which she is credited by the referee. It is an obvious proper diminution to be made.

5. The rent agreement of August 1st, 1875, the fruit of the efforts of Lockhart and accomplished through his instrumentality, of which his letters furnish plenary proof, accepted and ratified in its execution by the principal and to which the agent becomes an attesting witness also, containing an express mention of the agency, was material in like manner as the original contract in buying, to show the continuing relations subsisting between them as principal and agent.

6. The defendant ought not to be charged with the endorsed payments of annual interest amounting to $1,800, as upon his testimony, it was his own appropriation of that sum out of the receipts from cotton, and in the report of the referee he is charged with the whole fund received from that source, and he would be made responsible for the same money twice. It is needless to elaborate the question of the competency of the defendant to give his testimony upon the matter, as it is discussed in the opinion in the defendant's appeal. We will only add that his testimony is partially sustained by that of the witness, Gooch.

7. The subject of the last exception is disposed of in the preceding.

Upon a careful review of the whole matter, we find no

ground for a correction of the rulings presented for review in this appeal of the plaintiff, and affirm them. This will be certified that the cause may proceed in the court below.

No error.         .         Affirmed.

In same case upon defendant's appeal:

SMITH, C. J. The controversy between the parties, though expanded into a great number of exceptions taken during the progress of the investigation before the referee, and again before the judge upon his review of the report, is in substance confined to the disposition of, and responsibility for the rent of the cotton made on the Deans farm during the years 1871 and 1872. The crops afterwards raised, and which pursuant to the contract were to be appropriated to the payment of the purchase money of the land, have passed into the defendant's hands, and the admitted amounts received on the sales of each year have been thus applied, and form charges in the account rendered by the referee against the defendant. The various questions made as to the admissibility of evidence are material only as affecting its sufficiency to sustain the findings of fact, alike by the referee and the revising judge, since under the late constitutional amendments, in enlargement of the appellate jurisdiction of this court, the duty is imposed upon us to eliminate the incompetent and weigh the force and effect of what remains, free from objection. The matters disputed in the appeal are comprehended in two inquiries, the solution of which in a great degree determines the result of the action, and they are:

1. Was Lockhart the general agent of the intestate, his wife's mother, in the management of the farm and in the

29

disposal and appropriation of the rent products to the reduction of the encumbering debt?

2. Was the delivery of the cotton received from the tenants to the officers of the railroad company at Garysburg for transportation to the consignee at Petersburg, a delivery to the defendant so as to impose on him, and remove from her, the consequences of subsequent loss?

These propositions were ruled by the referee, upon the proofs offered and received, favorably to the defendant, but his deductions of fact and law are reversed upon the hearing before the judge—much of the evidence being rejected and the residue held to be insufficient to warrant the findings. We propose to consider these propositions put into an interrogative form, and the competent and pertinent evidence applicable to them, as a substantial solution of the controversy involved in the defendant's appeal.

The principal exception taken and relied on by the plaintiff is to the legal capacity of the defendant, under the proviso of section 343 of the Code, to testify to transactions which took place between himself and the alleged agent, after the death of both principal and agent, and to the acts and admissions of the latter, while professing to act as such agent and within the scope of the authority conferred. The subject has been discussed and a construction put upon the statute, deciding the very point in the case of *Morgan* v. *Bunting, ante,* 66, against the objection, rendering further discussion unnecessary, and we pass to an examination of the proofs of the general agency of Lockhart.

We are clearly of opinion that the referee had sufficient evidence before him to support his conclusion, that Lockhart was not only the intestate's agent in bringing about the agreement for the purchase of the land, but in its general management afterwards, and in collecting, forwarding and disposing of the products of the farm, and we think His Honor erred in overruling the conclusion arrived at

and announced in the report. We are content to refer to the more prominent portions of the testimony to sustain the finding of the agency by the referee.

1. The farm belonged to Lockhart and was bought by the defendant under a sale by execution against him. He was active and interested in effecting the re-purchase by the intestate and its retention in the family, and in fixing the terms and conditions of the contract entered into for that purpose, to which he became a subscribing witness. This is an explicit sanction of the principal to the agency assumed and exercised, and a ratification of what had been done in the incipient transactions with the defendant.

2. The intestate, her daughter and Lockhart, the husband, constituted a single family living in the same house, and it does not appear that she ever assumed personal control of the farm or undertook herself to supervise its operations, or to receive and dispose of its rents, a service unsuited to her sex, age and physical condition, or had any other person to act in her behalf.

3. During the long interval extending over several years and up to Lockhart's death, he alone did exercise supervisory authority, professing to derive it from the intestate, gathering and forwarding the crops in her name to the consignee commission house in Petersburg, and her knowledge of what was done and full assent may be reasonably presumed in the absence of evidence to the contrary.

4. The contract of lease entered into in 1875, procured through the active and persistent efforts of Lockhart, and to which he also is a subscribing witness as shown in his correspondence with the defendant, is a direct and positive recognition of the agency in that transaction, and in the instrument itself he is designated as *her agent*.

5. The presence of Lockhart and his sons at times on the farm, the contract for putting up houses for tenants, the manner of keeping the accounts by the consignees and their

acquiescence in Lockhart's control of the funds derived from sales, the making out the papers showing the deliveries of cotton by the tenants at the railroad depot, these and numerous other concurring facts developed in the voluminous testimony of which it can hardly be supposed the principal was ignorant, strongly support the inference of a continuous authority conferred so to act, or of a ratification which is its equivalent.

II. The next inquiry relates to the legal effect of the deliveries to the transportation agents at Garysburg, in shifting the responsibilities, for a loss arising out of the failure of the commission house to which the cotton was sent, from the intestate to the defendant. The change could not take place and the defendant be charged with the loss, unless control over the cotton forwarded was then transferred to the defendant, so that its future disposal was at his discretion and risk. If control was retained by the agent, it would be unreasonable, merely because of the executory agreement for the lien, that the defendant should suffer by a disaster he was unable to avert, and which did not result from any want of diligence on his part. Until the cotton was put in the custody of the defendant, or some agency of his, and under his control, the perils of loss must follow the property and abide upon the intestate. The evidence shows this to have been the case, that no such transfer had been made up to the bankruptcy of the consignees, and that the only money received from this source was the inconsiderable ratable share paid out of the bankrupt estate upon the proved claim.

These general views dispose of most of the exceptions arising upon this appeal, and it would be superfluous to pursue them in detail.

The exceptions numbered 14, 15 and 16 are to the exclusion of the defendant's explanation of his rendered account;

of the headings to his letters; of the correspondence between himself and the agent; of the credits endorsed upon the notes; the testimony (unless obnoxious to the inhibitions of the Code, § 343) is clearly relevant and proper, as otherwise inadvertent errors and mistakes would be beyond the reach of correction, and the truth often distorted or repressed. It remains then to be considered the bearing of the statute upon the defendant's capacity to show by his own testimony, that the endorsement was not a *transaction* with the deceased, of which she had any personal knowledge, or could speak, if living, in explanation, but his own individual act done when she was absent, and in which she did not herself participate. If *these circumstances* could be proved by an indifferent witness, it is manifest the mouth of the defendant would not be closed against explanations necessary to a correct understanding of the act itself, and if required, a correction in amount and date.

It is only when the "transaction or communication" is, or appears to have been between the deceased and the living party, that the statute interposes and prohibits the latter from giving in testimony relating to such "transaction or communication," and for the obvious reason that the other side cannot be heard. But the fact to which the testimony is pertinent being shown to have occurred out of the presence of the deceased, and in no sense a *transaction* with her, (and we see no reason why the preliminary matter affecting the competency of a party to testify may not be proved by him as well as by an indifferent witness), the statutory impediment is removed and the objection ceases to have force. The endorsement is but evidence of a partial payment, capable of disproof by proper testimony, and it would seem equally so, when it is shown to the judge, that the deceased was not a party and no transaction was had with her, by the testimony of the living person who alone made

it.   To hold otherwise is to give to the entry the force of an estoppel excluding all explanatory evidence.

This view of the statute is not at variance with the interpretation put upon it in *Woodhouse* v. *Simmons,* 73 N. C., 30, where it is held that an assignee of a note under seal cannot prove that the debt had not been paid, to repel the presumption that it had been, arising out of the lapse of time; for the denial of a transaction presumed in law stands upon the same footing as independent evidence offered of any fact.   In the present case the entry is in the defendant's hand-writing, and the proposal is to show when and where it was made, not in the intestate's presence but as a voluntary appropriation of proceeds of rent-cotton with which he is charged in the account rendered by the referee, and to prevent a double charge against him.

It may be suggested in this connexion whether the administratrix in availing herself of this endorsement as evidence in exoneration *pro tanto* of her intestate, has not thereby herself opened the door to explanatory evidence from the defendant, but it is not necessary to decide the point. *Knight* v. *Killebrew, ante* 400.

We regret that this is not the unanimous opinion of the court and that Mr. Justice RUFFIN dissents as to the last point, who is unable from impaired health to give his reasons in detail therefor.

We do not agree with the court that the defendant ought to be charged with the value of the entire crops raised on the farm during the years 1871 and 1872, but he is liable to account and is properly debited with the $450, due as interest to January 1st, 1872, and with $169.65 collected out of the bankrupt estate.   This exception as to those crops is allowed, not only for the reasons already stated, but on the further ground that the forfeiture under the mortgage incurred by the non-payment of the principal moneys fall-

ing due on January 1st of the years 1872 and 1873, is waived, and the intestate was compellable. to pay only the interest accrued to those dates, and thus the excess beyond interest was surrendered to her.

While if material to the determination of the appeal we might sustain many exceptions to evidence admitted, we think that which is competent to be heard sufficient to warrant the referee's findings of fact and his conclusion of law. The report must therefore be confirmed and the adverse rulings of the court in regard thereto reversed. The judgment must be for redemption upon payment of the intestate's indebtedness for the residue of the purchase money, and if necessary for a sale of the premises for the satisfaction of the debt.

Error.                                              Reversed.