S. M. LOCKHART, Adm'x, v. J. J. BELL.

*Rehearing—Witness—Section 590—Presumptions—Presence of Party.*

1. The decision in this case, as reported in 86 N. C., 443, affirmed, and petition to rehear dismissed.

2. The transaction or communication must be shown to be between the deceased and the witness, in order to incapacitate the latter from testifying under section 343 of the Code of Civil Procedure.

3. The mere entry of a credit on a bond, due the intestate's estate, is not sufficient to raise a presumption of fact that the intestate was present at the time the credit was entered, where it appeared that the intestate's business had been conducted by an agent.

4. To raise such presumption, the nature of the transaction must be such as to require the presence of the deceased person in respect to it.

5. The witness under the facts of this case was held competent to prove the fact that the credit was endorsed on the bond; and to enable the court to pass on his competency, the witness may be permitted to testify to the court whether the transaction was between him and the deceased or not.

( *Watson* v. *Dodd*, 72 N. C., 240; *Haywood* v. *Daves*, 81 N. C., 8; *Devereux* v. *Devereux, Ib.*, 12; *Lewis* v. *Rountree, Ib.*, 20; *Woodhouse* v. *Simmons*, 73 N. C., 30; *Sumner* v. *Candler*, 86 N. C., 71; *Whitesides* v. *Green*, 64 N. C., 307; *Halyburton* v. *Harshaw*, 65 N. C., 88; *Morgan* v. *Bunting*, 86 N. C., 66; *Isenhour* v. *Isenhour*, 64 N. C., 640; *Brower* v. *Hughes, Ib.*, 642; *Gray* v. *Cooper*, 65 N. C., 183; *March* v. *Verble*, 79 N. C., 19; *McKee* v. *Lineberger*, 87 N. C., 181, cited and approved).

PETITION by plaintiff to rehear, heard at February Term,. 1884, of THE SUPREME COURT.

The decision of the case, adverse to the plaintiff petitioner, and which she now seeks to have reversed, is reported in 86 N. C., 443.

*Messrs. Thomas N. Hill* and *R. B. Peebles,* for plaintiff.
*Messrs. Mullen & Moore* and *Day & Zollicoffer,* for defendant..

MERRIMON, J.  All courts, and especially courts of final jurisdiction, should decide the cases that come before them for adjudication upon thorough examination and the most careful consideration.  When they have so decided, it is of the highest importance that they adhere firmly to their decisions; they should modify or reverse them only when the error assigned is manifest.  It is due to the parties litigant, and it is important in a more general and higher sense to the public in the administration of justice, that there shall be a decent and orderly end to litigation, and that the decisions of the courts shall be uniform and stable as well as correct.  There can scarcely be a more serious public evil, or a greater reproach to government, than weak and vascilating courts of justice.

The decision of a case at once becomes authority—an authoritative exposition of the law as applicable to that and like cases,. and it is not to be disturbed for light and trivial causes, or upon merely speculative considerations as to what the law ought to be, or because some interested party is disappointed and dissatisfied.  It is scarcely to be expected that the parties to a litigation will at first, in the heat of their zeal, be pleased with a decision adverse to them.

No decided case, where the court had full and fair opportunity to understand it in all its material bearings as to the facts and the law affecting it, and gave it just and faithful consideration, ought ever to be disturbed.  *Stare decisis et non quieta movere.*

A very considerate law-writer says : "The power of a court of last resort to overrule a solemn decision of its own, made upon full argument, is at least of doubtful propriety. It is well known that in England the House of Lords does not possess the power to overrule a former decision of the house, the only remedy being the passage of an act of Parliament changing the law, and it would add much to the respect which ought to be entertained for such a tribunal, if our courts of last resort were subject to a similar restriction. We have had some lamentable instances, of late years, of the overruling of former solemn decisions, on a change in the political majority of courts, which have much lessened the respect formerly entertained by the people and the profession for their judgment." Brightly Elec. Cases, 630.

Where a case was poorly argued, or not at all, or some weighty authority was not cited by the counsel and the court failed to find it, or some material matter was overlooked by inadvertence or otherwise, or the case was hurriedly, unduly decided, in such cases, if error be made to appear upon an application to rehear, the court ought promptly and cheerfully to correct the error; it certainly would hasten to do so in a clear case. It is admitted that errors do sometimes happen; no earthly tribunal is perfect or infallible; and to warrant the reversal of a solemn decision of the court, the error should plainly appear.

In *Watson* v. *Dodd*, 72 N. C., 240, the late Chief-Justice PEARSON said : "The weightiest considerations make it the duty of the court to adhere to their decisions. No case ought to be reversed upon petition to rehear, unless it was decided hastily, and some material point was overlooked, or some direct authority was not called to the attention of the court." This court has in numerous cases recognized and uniformly accepted the law as thus laid down. *Haywood* v. *Daves*, 81 N. C., 8 ; *Devereux* v. *Devereux*, *Ib.*, 12 ; *Lewis* v. *Rountree*, *Ib.*, 20. See also, Ad. Eg. (1 Am. Ed.), 758–766, and notes.

LOCKHART *v.* BELL.

The case before us was elaborately and ably argued; the court gave it much and careful consideration in the examination of errors assigned; and the authorities cited, including many not cited by counsel, were examined and considered by the court. The facts involved in the findings of the court below and the report of the referee were duly examined. It does not appear that any material point or matter was overlooked. Nor is any important authority brought to our attention now that was not considered. Indeed, the case was very fully heard and considered in all respects. So that the substance of the application to rehear is, that the court, with substantially the same lights before it, shall retry the case and reverse its decision upon the law and the facts!

The elaborate brief of the petitioner's counsel suggests nothing either in the argument, or the authorities cited, that makes it proper for us to do so. The alleged errors are imperfectly and vaguely assigned; they certainly are not " *distinctly* " pointed out as the rule requires; and many, most of them, are alleged errors of fact already passed upon. These the court would not be at liberty to consider. Cases are reheard only upon matters of law. See the rule providing for rehearing cases, 81 N. C., 610.

The court, nevertheless, are anxious to do justice to the petitioner, and feel satisfied that she has no reasonable ground of complaint in respect to the decision of which she complains; and hence have looked through the record, re-examined the authorities cited and criticised by counsel, and have considered the whole matter; and upon such re-examination, we are satisfied that the decision is a just and proper one, and that the law applicable to it is correctly expounded in the opinion delivered by the Chief-Justice. *Lockhart* v. *Bell,* 86 N. C., 443.

The principal ground of error assigned and discussed in the brief of the petitioner's counsel is, that the court held that the defendant Bell was a competent witness to testify as to how the endorsement of credit on each of four bonds for $2,500 each,

given by the intestate of the petitioner to the defendant, came to be placed on the same, and that the same amounts were charged against him in another way and place in favor of the petitioner.    The entry on one of these bonds will serve to explain the point of objection as to all.    One of the entries appear in these words:

"1873, January 1st.

Received in part, six hundred dollars, being the interest on $10,000 from January 1st, 1872, to January 1st, 1873."

(Signed)    "J. J. BELL."

The petitioner insisted that the *proviso* contained in section 343 C. C. P., rendered the defendant, the obligee in the bonds mentioned, incompetent as a witness in his own behalf in the action, to testify touching the credits so entered upon the bonds, because the intestate of the petitioner, the obligor therein, had died before the bringing of the action, and the entry of the credits was a "*transaction or communication*" between the said intestate and the defendant.

It did not appear otherwise than by such entries of credits, that the intestate of the petitioner was present at the time the credits were entered, or that she had any positive knowledge of them from any communication with the defendant.    The petitioner contended that the entries were evidence of the fact that the *intestate* paid the money mentioned therein to the defendant in person, and that she had personal knowledge of the transaction about the credits as between herself and the defendant; and likewise, that the entries raised the presumption of the presence of the *intestate* at the time they were made by the defendant, and of such a transaction.

The court below held that the defendant was a competent witness in his own behalf to explain how the entries on the bonds came to be made; that the intestate had received credits for the same sums of money in another way and place, and that the intestate was not present at the time the entries were made, and that the defendant had no personal communication with her about

them. This court approved that ruling. See particularly 86 N. C., page 453, of the opinion in *Lockhart v. Bell.*

The petitioner alleges that in such affirmance there is error, and her counsel rely upon what they contend is a proper construction of the *proviso,* and the construction placed upon the same by this court in the cases of *Woodhouse* v. *Simmons,* 73 N. C., 30; *Sumner* v. *Candler,* 86 N. C., 71.

We think the defendant was competent to testify as he was allowed to do, in any aspect of the matter.

The substance of the *proviso* in section 343 C. C. P., as applicable to this case is, that the defendant is not a competent witness to testify in his own behalf, as *"to any transaction or communication between"* himself and the intestate of the petitioner in reference to the bonds mentioned or the credits thereon.

It is conceded that he could not be allowed to testify in such case, because, if the intestate were alive, she having knowledge of such "transaction and communication," might contradict what the defendant might swear as to the same. She being dead, cannot be heard in her own behalf, and in this respect the *proviso* mentioned closes the mouth of the defendant. This is the ground and reason of the statute. *Whitesides* v. *Green,* 64 N. C., 307; *Halyburton* v. *Harshaw,* 65 N. C., 88; *Morgan* v. *Bunting,* 86 N. C., 65.

Whether the *transaction* in question was one between the intestate of the petitioner and the defendant or not, was a question to be decided by the court in passing upon the *competency* of the defendant to testify as he did, and it was to be determined upon proper evidence like any other similar question.

To render the defendant incompetent, it must have appeared to the court that the "transaction or communication" was between the intestate and himself, as has been said. The petitioner insists that it did so appear from the entries of the credits as they appeared; that from them *it is presumed* the transaction about them was between the intestate and the defendant, and further, that the defendant was not a competent witness to repel such presumption.

We think this ground is not tenable. The argument is not sound. The bonds belonged to and were in possession of the defendant, and he entered the credits on them. It does not appear from them, or any words in them, that the intestate was present at the time they were made, nor that she, in person, paid the money or knew anything about the credits. There was no obligation resting on her to be present, nor did the nature of the transaction require that she should be. The entry of them could take place just as well without her presence as with it. The money could have been paid just as effectually and properly by another as by herself; and, indeed, it appearing that she was a lady who transacted most if not all her business through an agent (her son-in-law), the probability was that the payments were made in some other way than by herself in person, and this is strengthened by the fact that the entries are silent as to who paid, or how the payments were made. There is nothing in the entries, the terms, or the nature of them, or the nature of any transaction about them, that implied, at all events sufficiently implied, that the intestate was present at the making of them, or that any "transaction or communication" about them took place between her and the defendant. The mere entry of a credit on the bond of a lady who did the most of her business through an agent, without any recital as to who paid the money or how it was paid in that respect, is too slight a fact, whether reference be had to its terms or its nature and effect, to raise the *presumption* of fact, that she was present at the entry of such credit, and had knowledge of a "transaction or communication" about the same between herself and the party making the entry. To raise such a presumption in the absence of other evidence, at least, the nature of the transaction must be such as to *require* the presence of the deceased person about the "transaction or communication" in question. Certainly in this case there were no such facts and circumstances as raised such a presumption, much less was there any ground to raise a presumption of law to that effect.

There was no positive testimony going to show that the intestate was present when the defendant made the entries mentioned,

or that she ever knew anything about them from him. On the contrary, the evidence showed that she did most, if not all her business transactions through an agent, her son-in-law. Indeed, the great weight of the evidence material to the point went to show that she knew nothing of the entries or any transactions about them as between herself and the defendant.

But in any view of the matter, the defendant was a competent witness to testify that the transaction, about the entries of credit in question, was not between himself and the intestate of the petitioner, and that he had no personal communication with her about them. Evidence as to this went to the court, and this fact was independent of the main fact, as to how the entries came to be made, and the application of the money; it did not prove or tend to prove the main facts. *Isenhour* v. *Isenhour*, 64 N. C., 640; *Brower* v. *Hughes, Ib.*, 642; *Gray* v. *Cooper*, 65 N. C., 183; *March* v. *Verble*, 79 N. C., 19; *Pinnery* v. *Orth*, 88 N. Y., 447; Abb. Tr. Ev., 66.

It is urged by the counsel that this construction of the *proviso* will put the estates of deceased persons at the mercy of dishonest creditors. With this we have nothing to do; such a consideration might be addressed to the legislature as a reason why the law should be changed. This court must accept the statute and apply it as it finds it on the statute book. It may be said, however, that except as to " transactions or communications " between the intestate and the defendant, the latter may testify in his own behalf without limit. This may seem to the petitioner unwise. Nevertheless, the law allows it. *Whitesides* v. *Green, supra; Isenhour* v. *Isenhour, supra; McKee* v. *Lineberger*, 87 N. C., 181. This case does not come within the exception, and that is all that can be said of it. The estate of the intestate is in no worse condition than others under like circumstances.

The counsel for the petitioner lays great stress upon *Woodhouse* v. *Simmons, supra*, and insists that that case in principle is precisely like the present one. The two cases are indeed very

different from each other, as a slight examination will show. In that case, the *statute presumed* a payment of the bond sued upon. The obligors were dead—the surviving obligee was offered as a witness in his own behalf, to prove that the bond had not been paid, and it was properly held that he was not a competent witness to prove this fact, because, *perforce of the statute,* there was a presumption of fact that the obligors paid the debt to the obligee, and both parties personally knew the fact, each from the other. The surviving party was not competent because the deceased obligees were presumed under the statute to have knowledge of the fact of payment as a personal transaction between the parties. The court did not hold that a *credit on the bond* raised a presumption of fact that the obligors were present at the entry of it, and of a transaction between the parties. And, besides, it was proposed to establish the principal fact by the surviving obligee.

That is not the case before us. Here, there is no statutory presumption of payment—no fact appearing in the entry of the credits—nor is there anything in the nature of the transaction that reasonably could be held to raise a presumption of the presence of the intestate when the entries were made. And besides, the defendant in testifying to the absence of the intestate, was not testifying as to the principal fact to be established.

It is likewise earnestly contended that this case is like that of *Sumner* v. *Candler, supra.* It that case, it appears from the receipt in question, signed by the intestate of the plaintiff, the recital in it, and the nature of the transaction, that the intestate was present at the time and the place, when and where the receipt was signed. In the nature of things, the transaction could not have taken place in the absence of the intestate, and it appears from Candler's testimony that he was present. He was not offered as a witness to prove in his own behalf the absence of the intestate, or that the transaction was not between the two, but to prove and explain a transaction between himself and the intestate of which both had knowledge, each from the

other. The intestate executed a receipt at a particular place and delivered it to Candler. Plainly, this was a transaction between the parties.

We do not deem it necessary to notice further any other points presented by the petition. We are satisfied that the case was properly decided in all material respects. There is no error, and the petition must be dismissed with costs to the defendant.

No error.                                              Affirmed.