GRIZZELLA A. MURPHY v. NEILL W. RAY, Adm'r. *de bonis non.*

It is not error in the Court below to reject evidence where it does not appear that the evidence offered is material to the point in issue.

Where an Executor, Administrator, next of kin, &c., is examined as a witness in his own behalf concerning transactions with the deceased, the evidence of any person (the plaintiff) not otherwise rendered incompetent, is admissible to contradict or explain the evidence of such Administrator, &c.

The fact that a witness was at one time the agent of a party deceased, does not render his evidence incompetent, after the agency has ceased to exist.

CIVIL ACTION, upon a bond for maintenance, tried before *Buxton, J.,* at Spring Term, 1875, CUMBERLAND SuperiorCourt.

The following is substantially the statement of the case sent up to this Court as a part of the record: The action was originally instituted in the name of Elizabeth Murphy as plaintiff, against the present defendant, who is the administrator *de bonis non* of Daniel B. Murphy. By leave of the Court, the summons and the pleadings were amended so as to make Grizzella A. Murphy, assignee of Elizabeth Murphy, party plaintiff, instead of Elizabeth Murphy, it appearing to the Court that Grizzella A. Murphy claimed to be the real party in interest under an assignment of the bond to her. After the rendition of the verdict by the jury upon the issues submitted, William J. Buchanan and Mary Ann Buchanan his wife, were allowed to join themselves as defendants in the action as heirs at law and the next of kin to Daniel B. Murphy, deceased.

It was in evidence that Mrs. Elizabeth Murphy, a widow lady in advanced life, was possessed of considerable estate in land and negroes, having two children, both of them grown, one being Daniel B. Murphy, the intestate of the defendant, and the other Mary Ann, wife of the defendant William J. Buchanan, entered into an arrangement with her children in the year 1850, by which the bulk of her property was to be divided between Daniel B. Murphy and W. J. Buchanan and

wife, and in consideration therefor she was to be supported by them. This arrangement was carried into effect on the 16th day of September, 1850, and on the same day Daniel B. Murphy executed a bond whereby he became bound in the penal sum of five thousand dollars, the condition of which bond was of the tenor following : " The condition of the above obligation is such that should the said Daniel B. Murphy provide for the comfortable maintenance of the said ˙Elizabeth Murphy, and pay her the sum of fifty dollars annually during her natural life, should it be required, then the above obligation to be void, otherwise to remain in force and virtue." On the same day W. J. Buchanan and his wife executed a similar bond, and the parties executed the following articles of agreement :

" *Whereas*, Elizabeth Murphy, by deeds from Thomas Murphy and Daniel Murphy, husband of said Elizabeth, holds certain property consisting of lands and negroes, &c., to be allotted at her death to the heirs of her body, Daniel B. Murphy and Wm. J. Buchanan and wife, Mary Ann, as by reference to said deeds will more fully appear. The said Elizabeth Murphy, mother, having sole power and control in the premises, is willing to distribute in part according to said deeds, consenting to a division of the land and negroes, and reserving to herself the right and title in two negroes, named John and Anna, the heirs relinquishing all claim to said negroes, and to give bond in the sum of five thousand ($5,000.00) dollars each for the comfortable maintenance, to pay each fifty dollars annually, should it be required. And in view of carrying out said division, we have constituted and appointed Daniel Mc-Cormick, David McNeill and Joel Williams, as commissioners and bonds to each other to abide by the same, this the 16th September, 1850.

In witness we have hereunto set our hands and seals.

(Signed)   ELIZABETH MURPHY,   [SEAL.]
      W. J. BUCHANAN,    [SEAL.]
      MARY ANN BUCHANAN,[SEAL.]
      D. B. MURPHY,     [SEAL.]" ˙

These papers were drawn by one David McNeill, a neighboring magistrate, who was called on for that purpose, and who was one of the commissioners selected to make the division. On the same day the division was completed, and the children of Elizabeth Murphy put in possession of the respective shares allotted to them.

Mrs. Elizabeth Murphy made her home with her son David B. Muphy, who was the husband of Grizzella A. Murphy, the present plaintiff, for some eight or ten years. She lived unhappily there. She was of a curious disposition and her son was reckless and intemperate and she was afraid of him. At the end of that time she left his house and went to live with her sister Mrs. Ray, and continued to reside there until the death of Daniel B. Murphy, which occurred in 1867. During the period she was at the house of Mrs. Ray she paid but little board, amounting in all to $30.00. She had but scant means. She received nothing from her son, and after the war she received nothing from the Buchanans, who removed to Texas where they reside. On the 27th of July, 1867, Mrs. Elizabeth Murphy returned to the house of Grizzella A. Murphy, the widow of her son Daniel B. Murphy, and continued to live there until her death which occurred on the 3rd of April, 1872. From the day she returned to the house of the plaintiff the the plaintiff had sole charge of her, and at her own cost maintained her, nursed her, and buried her. Neither the administrator of Daniel B. Murphy, nor the Buchanans contributed any thing to her support. Daniel B. Murphy died without children and Mary Ann Buchanan is his heir at law. The plaintiff is his widow and has had dower and a year's support allotted to her. Upon the death of Daniel B. Murphy one Alexander McKethan, on the 1st of July, 1867, took out letters of administration upon his estate, but was subsequently removed on 10th April, 1863, because of failure to enlarge his bond, it becoming necessary to sell real estate for assets, and Neill W. Ray, the present defendant, was appointed administrator de bonis non. McKethan is the brother of the plaintiff

Grizzella A. Murphy.  In 1869, the second year after the return of Elizabeth Murphy to the house of the plaintiff, the same magistrate who drafted the two bonds and the articles of agreement, was again called on to draw other papers relating to her maintenance.  He drafted these papers which were all executed on the 20th November, 1869, as follows:

1.  A bond of the following tenor:

STATE OF NORTH CAROLINA, }
    Cumberland County. }

Know all men by these presents that I, Grizzella A. Murphy, am firmly bound unto Elizabeth Murphy in the sum of two thousand dollars, current money, to the payment whereof well and truly to be made and done, I bind myself, my heirs and representatives.  Signed and sealed with my seal, this 20th day of November, 1869.

The condition of the above obligation is such that should the said Grizzella A. Murphy provide for the comfortable maintenance of the said Elizabeth Murphy during her natural life and at her death provide a decent funeral, then the above obligation to be void, otherwise to remain in full force and virtue.

(Signed,)          G. A. MURPHY,    [Seal.]
                   JNO. W. McKETHAN, [Seal.]
Sealed and delivered in the presence of
   D. McNEILL,
   R. R. ROBINSON.

2.  An assignment under seal of the interest of Elizabeth Murphy in the two bonds for maintenance executed Sept. 16th, 1850, to Grizzella A. Murphy.

3.  A power of attorney to Alex. McKethan to collect certain notes belonging to Mrs. Elizabeth Murphy, also to bring suit upon the two bonds aforesaid for the benefit of Grizzella A. Murphy.

Both the assignment and the power of attorney were signed by Elizabeth Murphy.

By virtue of the authority claimed under these documents this action was brought originally in the name of Elizabeth Murphy, McKethan acting as her agent. The suit is instituted on the bond for maintenance executed by Daniel B. Murphy.

The defence set up is that the instruments executed by Elizabeth Murphy on the 26th of Nov., 1869, are invalid :

1. Because of mental incapacity.

2. Because of fraud and undue influence exerted to procure their execution.

The following issues were submitted to the jury and the jury responded respectively as follows :

1. Was Mrs. Elizabeth Murphy of sound mind at the date of the assignment of the bonds to the plaintiff on the 26th of September, 1869 ? The jury found she was.

2. Did the plaintiff, Grizzella A. Murphy, procure the assignment to be made to her by Mrs. Elizabeth Murphy by the exercise of undue influence ? The jury found she did not.

3. What was the value of the maintenance afforded by the plaintiff to Mrs. Elizabeth Murphy from 27th July, 1867, to the time this suit was brought, 5th May, that is for two years, nine months, and eight days ? The jury responded $25 per month with interest from May 5, 1870.

4. What was the value of the maintenance from May 5, 1870, to the death of Mrs. Elizabeth, 3rd April, 1872, being one year, nine months and twenty-eight days, also the funeral expenses paid by Mrs. Grizzella A. Murphy ? The jury found $30 per month, and funeral expenses $40.00.

The defendants thereupon moved for a new trial and upon the argument of the rule alleged error in admitting evidence, after objection taken, as follows :

1. One of the defendants' witnesses had testified that Mrs. Elizabeth Murphy had left her mother and gone to live with Mrs. Grizzella A. Murphy in 1867, and that when she left she carried with her a bag containing what the old lady said was

money, gold and silver. The bag was about eight inches in length and four inches in width, and was a good handfull to lift. To rebut this evidence the counsel for the plaintiff proposed to ask her whether Mrs. Elizabeth Murphy brought any gold or silver money with her when she come to plaintiff's house ?

The defendant objected on the ground that the witness was a party in interest and the question related to a transaction between her and Elizabeth Murphy, now deceased, and was rendered incompetent by sec. 343, of C. C. P. His Honor overruled the objection and the defendant excepted. There were other exceptions to the admissibility of evidence, all of which are stated in the opinion of the Court.

The Court gave judgment for the plaintiff, according to the verdict, and thereupon the defendants, Buchanan and wife, appealed.

*McRae,* for the appellant.
*Merrimon, Fuller & Ashe,* contra.

BYNUM, J. This case is here by appeal from the rulings of his Honor, in the Court below, on questions of evidence.

1. Evidence had been given by the defendant that when Elizabeth Murphy, the deceased, assignor of the plaintiff, moved to her house, she brought with her a bag of gold and silver. To contradict this, the plaintiff was introduced in her own behalf and allowed to testify that Elizabeth did not bring any bag of gold or other coin, when she moved to her house. The defendant objected to this testimony on the ground that it was excluded by C. C. P., sec. 343. It is unnecessary to say how it would be, if the evidence had been material to the issue, but a sufficient answer to the objection is, that the evidence on both sides was wholly irrelevant and immaterial to the issues being tried. What the bag of gold had to do with the matter, does not appear.

2. The defendant introduced witnesses who testified to cruel acts of mistreatment and undue influence by the plaintiff to-

38

wards Elizabeth Murphy, the intestate. The plaintiff, under objection, was introduced to explain and contradict this testimony, and did contradict it. When the defendant thus opened the door, by his own evidence, the matter was set at large, and the plaintiff's rebutting and contradicting testimony became competent by the express provision of C. C. P., sec. 343.

3. McKethan was offered as a witness for the plaintiff, and objected to by the defendant, on the ground that he had been a former administrator on the estate of D. B. Murphy, deceased, and also had been the agent of Elizabeth Murphy. Even if these facts could have at any time affected his competency, they certainly do not affect it after these relations had ceased to exist, as was the case when he was offered.

4. At the request of the plaintiff's counsel, the Court in the charge to the jury, instructed them that the action was properly brought, that is, as we understand it, as to the parties to the action. The jury had nothing to do with that question, whether correct or incorrect in law, but the exception of the defendant, that the instruction influenced the verdict of the jury, is rather far-fetched. It is not seen how it could reasonably have had that effect, as the jury was empannelled to try certain written issues of fact.

PER CURIAM.                                    Judgment affirmed.