SAMANTHA C. WILSON v. CLARA M. FEATHERSTON, individually and as administratrix of J. W. Wilson et al.

(Decided May 24, 1898).

*Trial—Witness, Competency of—Transaction with Deceased Person—Gift—Delivery Essential to Gift.*

1. In an action by a widow against her daughter individually and as administratrix of the latter's father to compel payment of the plaintiff's share in the estate, the testimony of such defendant is incompetent under Section 590 of *The Code* to prove a conversation between the decedent and a third person. The testimony of such third person, who was a bailee of property in controversy at the time of the conversation, and is a party defendant to the action, assurety on the administration bond, is also incompetent under Section 590.

2. Actual delivery and transfer of possession are essential to a gift of personal property, except where actual delivery is impossible or impracticable, in which case constructive delivery is allowable.

3. The delivery of a deposit book by a father to his daughter, with the expressed intention, at the time, of giving her the money and bonds which were referred to by memoranda in the book, is not a delivery of the money and bonds.

CIVIL ACTION tried before *Norwood, J.*, and a jury on exceptions to the report of referee, at August Term, 1897, of BUNCOMBE Superior Court. The facts appear in the opinion. From a judgment for the plaintiff the defendants appealed.

*Messrs. Merrimon & Merrimon* for plaintiff.
*Mr. A. S. Barnard* for defendant (appellant).

FAIRCLOTH, C. J.: John W. Wilson died August 28, 1893, leaving the plaintiff, his widow, and the defendant, Clara M. Featherston, his only child and heir at law. On September 6, 1893, the defendant, Clara M., administered on her father's estate, and the defendants,

J. E. Rankin and A. A. Featherston, were her bonds-men.

Plaintiff sues and demands her yearly allowance and her distributive share of the estate. Defendant says her father gave her all his estate, and that there is nothing to distribute or to pay the yearly allowance which had previously been reduced to judgment in the sum of $300. The estate consisted of money and bonds which John W. Wilson had placed in the hands of defendant, Rankin, for safe keeping, for several years before, with occasional deposits of rents, etc., and the account was kept in a "deposit book." Rankin testified that defendant, Clara, presented this book and got money *before* her father's death, and that he paid over all in his hands to defendant, Clara, after her father's death; that in July, 1893, Wilson and his daughter Clara were in his office, and defendant offered to prove by Rankin a conversation between himself and Wilson concerning his disposition of the funds in Rankin's hands. On objection, this evidence was properly excluded. *Code*, Section 590.

Defendant, Clara, testifying, was asked by her counsel, "State whether or not you heard a conversation between your father and J. E. Rankin at the Battery Park Bank in July, 1893, in regard to his bank deposit, and what disposition he had made of it?" This question was excluded on objection, and presents an important exception under Section 590 of *The Code*. We see no error, and the exception is overruled.

One purpose of Section 590 was to disqualify an interested party to testify to a conversation or transaction between a deceased and the witness, because there is no one to contradict the witness, and we think a true construction of that much construed section excludes the

evidence of a third party to such conversation, if the third party is interested in the result of the action, and there is no one to contradict the statement of the witness. Here, Wilson is dead, Rankin is a party and incompetent, and the witness, Clara, is a defendant and claims the property through a gift of her deceased father. So, she is interested, and there is no one else who can speak of the transaction or contradict the witness. In *Hallyburton* v. *Dobson*, this Court recognized the gravity of the question, but left it for "future consideration."

In a later case the plaintiff's testator was a trustee of the slave in question for one Lloyd. In the course of the trial Lloyd was offered to prove a conversation between the plaintiff's testator (trustee of the witness) and the defendant's intestate. The court excluded Lloyd's evidence, as he was practically the plaintiff in the action. *Barlow* v. *Norfleet*, 72 N. C., 535.

She said, "I got possession of the book on July 13, 1893." Dr. Burroughs testified, "I was Wilson's physician," and he said he wanted more attention; that "Hun (his daughter) would pay me." He lived with his daughter, and she, Mrs. Featherston, always paid me his bills; she paid them for him." Amanda Moore, a cook of defendant, testified, "I knew John W. Wilson; I stayed with him a few months before he died; I was up stairs with Clara Featherston and deceased; Wilson came up and said, 'Hun, here is my bank-book and all my money, and all I ask of you is to take care of me as long as I live.' He gave her a book at that time. It looked like the one identified by Rankin. Clara put the book in her trunk and locked it up in her room."

His Honor instructed the jury that there was no evi-

dence from which they could find that there was a gift of the money in Rankin's hands to the defendant, Clara Featherston, by her intestate, John W. Wilson, and directed the jury to answer each issue "No," and defendants excepted.

The main question is whether there was a delivery in law, upon the proofs in the case. Delivery is essential to a gift, whether it be *inter vivos* or *mortis causa.* It means passing over the property with intent to transfer the right of property and possession, and the burden of showing this is upon the donee. An intent to give or a promise to give will not be sufficient unless the subject matter passes under the control of the donee free from any control of the donor. *Causa mortis* and *inter vivos* are unlike in several respects, but there is no difference as to the need of delivery. This must take place in either case. The former may be defeated by a recall or recovery from the dying condition. But in the latter the title passes and cannot be recovered. It seems to be a wise provision that delivery must be considered essential, because it strengthens the evidence of the gift. The evidence should be clear and convincing in such cases, becauses *pro tanto*, they are a revocation of written wills, and much like nuncupative wills they are of a dangerous nature. These forms of gift rest in parol, and the fallible memory of witnesses impairs confidence in the evidence. Actual delivery and transfer of possession are simple and easily understood. Constructive delivery is also satisfactory when it applies, such as cases where actual delivery is impossible or impracticable. For instance, a bond for the payment of money, if the promisee actually delivers the bond, the decisions are that the right to the money promised passes by construction. The bond is an obligation, and it is property.

Now applying these rules to the case before us : The intention of the father to make a gift to his daughter is apparent. The possession of the money is not transferred, and nothing of value is delivered. The "deposit book is no more than a memorandum, binding no one, containing no obligation, and could only be used to refresh the memories of the depositor and depositee as to dates and amounts of their dealings. It does not appear that there were any changes in the entries during the life of Wilson. There is no pretence that the money was turned over or actually delivered.

Our opinion is that the delivery of the "deposit books" was not a constructive delivery of the money or county bonds. The danger of permitting large estates to pass from one to another by the evidence of servants or illiterate employees is sufficient to require convincing proof, such as actual delivery, or by written instruments. We had to consider a question of *causa mortis* at this term in *Newman* v. *Bost*, and it was distinctly announced that symbolical deliveries do not prevail now in this State, and that the proof of actual or constructive delivery must be clearly established. In our own reports, *Adams* v. *Hayes*, 24 N. C., 361, decided a case clearly illustrating the position we now occupy on this subject. To the legal student, see *Ward* v. *Turner*, 2 Ves., 431, and reproduced in White & Tudor's Leading Cases in Equity, Vol. 1, Part 2, marginal page 905, with copious notes of English and American decisions. As this decision will be decisive on the principal question between the parties, we will not examine other questions raised before the referee and his Honor.

Affirmed.