ABRAHAM R. COMSTOCK v. AMANDA COMSTOCK and Others.

May 25, 1899.

Nos. 11,682—(143).

Reformation of Deed—Decision Sustained by Evidence.

In an action to reform a deed, *held*, the decision of the court for the defendants is sustained by the evidence.

Conversation with Deceased Person—Interested Party not Competent Witness.

A party to an action, or interested in the result thereof, cannot give evidence as to conversations with a deceased person, even though the witness took no part in the conversation.

Rulings of Court.

Certain unimportant rulings disposed of.

Appeal by plaintiff and certain defendants from an order of the district court for Martin county, Quinn, J., denying a motion for a new trial. Affirmed.

*H. H. Dunn*, for appellants.

*T. J. Knox*, for respondents.

CANTY, J.

David Comstock entered a homestead of 160 acres on government land in Martin county, in this state, in 1863. He proved up and obtained a patent in 1870. Thereafter, in the same year, he and his wife conveyed the land to their son, Ellis V. Comstock, and in 1872 he in turn conveyed it to his mother. The respondents claim that these two deeds were intended merely as a means of transferring the title of the land from David to his wife, Amanda. The appellants claim that it was the intention of all parties that the latter deed should convey a life estate only to Amanda, and should convey the remainder to the eight children of David and Amanda, share and share alike, but that a deed in fee simple was made to Amanda by the mutual mistake of all the parties. David and Amanda continued to reside on the farm until the time of his death, in April, 1886. Shortly prior to his death, their son David G. Comstock came to reside upon the land, and has ever since cultivated the same, and his mother has ever since resided thereon with him. In October, 1893, she conveyed the land to David G., and he executed back to her a lease of it during her life.

This action was brought to reform the deed from Ellis V. to Amanda, on the ground of said mutual mistake. Plaintiff is one of said eight children, and the other seven were, with the mother, Amanda, made defendants. Four of these defendant children admit in their answer that the allegations of the complaint are true, and join the plaintiff in asking that the deed to Amanda be reformed. On the trial, the court, sitting without a jury, found against the plaintiff and the latter defendants, and they appeal from an order denying a new trial.

1. In our opinion, the evidence amply sustains the finding of the trial court that the deed from David and wife to Ellis V., and the deed from him to his mother, Amanda, were intended by all the parties thereto merely as a means of transferring the title of the land from David to his wife, Amanda. It would take very strong and clear evidence to sustain so stale a claim as that made by plaintiff, and the defendants who join with him, in attempting to have the deed to Amanda reformed. But the evidence furnished by them is neither clear nor satisfactory, and is flatly contradicted by

the evidence of other witnesses. The appellants testify to a general understanding, when the deed to their mother was executed, that she should have the land during her life, and, after her death, it should go to the eight children, share and share alike, and that these were, in effect, the statements made and the conversation had by all of the parties present when Ellis V. executed the deed to his mother. Ellis V. himself so testified. But he himself drew this deed, and he further testified:

"I always supposed that deed went to mother and her heirs." "I intended that mother should have a life lease of that, and at her death it was to go to the heirs." "Q. And you were surprised that the word 'heirs' was not in the deed? A. Yes, sir. * * * Q. You had always supposed it ran to her and her heirs? A. Yes, sir."

He further testified that by the word "heirs" he meant the eight children. He also testified:

"Q. Is it not a fact this whole transaction was a transaction in which your father and mother made this deed to you with the understanding that you were to reconvey to your mother? A. I had an understanding of that kind, yes, sir; that is, at some future time. Q. And pursuant to that understanding this deed was made? A. Yes, sir."

Another one of said four defendants, who testified to said statements and conversations as to what should be inserted in the deed to her mother, admitted that the witness and her husband agreed, in 1876, to take from her mother a deed in fee simple of a half interest in the land, and pay the mother $400 therefor, and that the deed was actually drawn up, but never executed, because her mother changed her mind, and refused to sell the land. Another of these defendant witnesses, who testified as to said statements and conversations, admitted, on cross-examination, that she knew that her mother, after the deed was made to her, mortgaged the land several times. The evidence of the appellants was fully met and rebutted by the evidence of respondents.

2. The court did not err in refusing to receive the testimony of these appellants as to conversations with, and statements made by, their deceased father, as to what the deed to their mother con-

tained or should contain. This evidence was clearly incompetent, under G. S. 1894, § 5660, whether the witness took part in the conversation or not.

3. The court did not err in permitting Amanda, the mother, to testify that she had no reason to believe or know that the deed was to run to her for life only; that, as far as she knew, there was no mistake in the deed; that it was her understanding at the time that it was a warranty deed; that such was her information when she received it; that, from the time the deed was made, she always believed herself to be the owner in fee simple of the land; and that she got the title to it under that deed. This testimony all went to show her want of knowledge or belief that there was a mistake in the deed. If it was error to sustain the objection to the questions referred to in the fifth assignment of error, it was error without prejudice, because the testimony sought was afterwards received without objection. If it was error to permit the witness Amanda to state that, after the land was so deeded to her, she mortgaged it several times, it was error without prejudice, because the evidence was not material.

These are all the questions raised having any merit, and the order appealed from is affirmed.