W. J. WITTY v. J. R. BARHAM et al.

(Filed 22 April, 1908).

1. **Deeds and Conveyances—Execution—Husband and Wife—Feme Covert—Abandonment—Evidence.**

    In an action of ejectment by a purchaser under trust deeds executed by a *feme covert*, when the defense is that the husband had not executed the deeds with her, the deeds were competent as evidence in making out plaintiff's chain of title. The question of their effect was a subsequent matter and presented the real point at issue.

2. **Same—Corroborative Evidence—Husband's Absence and Subsequent Marriage—Certificate of Marriage.**

    When the question of the validity of a deed of a *feme covert* in which the husband did not join depends upon whether or not the husband had not previously abandoned her, evidence is competent which tends to show the long-continued absence of the husband, and, as corroborative of his evidence that he had subsequently been married, the certificate of such marriage.

3. **Same—Wife's Destitute Circumstances.**

    To support the validity of trust deeds made by a *feme covert* without the execution of her husband, upon the question of abandonment, evidence of her extreme destitution at the time of their execution and that it was necessary for her to mortgage her land at the time in order to procure means of living was not incompetent.

4. **Same—Pleadings—Evidential Matters.**

    The question of abandonment affecting the validity of a deed made by a *feme covert* without her husband joining therein is evidential matter, and arises only when objection is made thereto, and it is not required to be set up by plea.

5. **Same—Transactions with Deceased—Husband an Interested Witness—Daughter Cannot Corroborate.**

    The husband is an interested witness in the event of the action, though not a party, when a trust deed made by his deceased wife is being attacked for the want of his joining therein; and upon the question of abandonment his evidence to the effect that his wife said to him she would give him a horse if he would leave and stay was incompetent. (Revisal, sec. 1631). The testimony of the daughter that she heard the conversation to that effect would be the "indirect testimony of an interested witness as to a transaction or communication with deceased," and also incompetent.

6. **Husband and Wife—Abandonment—Within the State.**
    To constitute abandonment it is not necessary that the husband should leave the State, under Revisal, sec. 1631.

7. **Husband and Wife—Agreement to Separate Not Abandonment—Subsequent Conduct and Abandonment.**
    A separation by consent of husband and wife does not constitute abandonment. But when the evidence established a long and unbroken absence of the husband thereafter, without communication; that the wife was destitute and was compelled to mortgage her land for her own support; that the husband in the meantime married and had lived consecutively with two other women, abandonment was proved.

ACTION tried before *Ferguson, J.,* and a jury, at June Term, 1907, of ROCKINGHAM.

Defendants appealed. ·

*Scott & Reid* for plaintiff.
*Manly & Hendren* and *C. .O. McMichael* for defendants.

CLARK, C. J. Ejectment by purchaser at sale under trust deeds executed by Martha Daniel, of Rockingham County, in 1892, 1893 and 1894, without the joining therein or written assent of her husband, Charles G. Daniel, to whom she had been married in 1882. They had one child born alive, but since dead. The husband left her in 1883 and did not thereafter reside with her. He married Esther Lyerly, in Rowan County, in 1891, and, she dying in a few months, he married still another wife, in Rowan, in 1894, with whom he is still living and by whom he has six children. In 1900 Martha Daniel died. The defendants are her children by a former marriage.

The introduction of the deeds in trust in making out chain of title was proper, and indeed necessary. The question of their effect was a subsequent matter and presents the real point in the case. Charles G. Daniel testified to his continuous absence from his wife from 1883 and to his two subsequent marriages above stated. The certified copy of the marriage license of Charles G. Daniel and Esther Lyerly and of

the certificate of marriage between them was competent to corroborate his evidence to that effect. Besides, there was the written agreement of counsel that this record should be admitted, to avoid, we presume, the expense of summoning witnesses. The evidence of the extreme destitution of Martha Daniel at the time of the execution of these deeds in trust, and that it was necessary for her to mortgage her land in order to procure means of living, while not necessary evidence, was certainly not incompetent. Nor was it necessary to allege in the complaint that Martha Daniel executed the deeds in trust without the written assent of her husband because abandoned by him. That was evidential matter, arising only when objection was made to the validity of the deeds. This was not an equitable matter requiring to be set up by plea, like undue influence or fraud in the treaty, but went to the legal validity of the deed, like mental incapacity to execute it or fraud in the *factum,* which can be put in evidence, though not pleaded. *Alley v. Howell,* 141 N. C., 113. The defendants did plead that the husband did not assent in writing to the trust deeds, but it was not necessary.

The witness Charles G. Daniel testified that he and his wife "could not get along together. She told me she would give me a horse if I would leave and stay. I took the horse. I cannot say why she gave me the horse, unless it was to get rid of me. I left because I thought she did not want me there after she made me the offer she did." The court, on motion of the plaintiff, properly struck out this evidence as obnoxious, under Revisal, sec. 1631. *Bunn v. Todd,* 107 N. C., 266. While the witness was not a party to the action, he is a "person interested in the event of the action," since if the plaintiff is defeated of recovery by the invalidity of the deeds in trust the husband is entitled to the enjoyment of the lands for life as tenant by the curtesy.

The court also properly excluded the testimony of one of the defendants offered to prove that she heard the aforesaid

conversation between her mother and said Charles G. Daniel, as that would be the "indirect testimony of an interested witness as to a transaction or communication with the deceased." *Stocks v. Cannon,* 139 N. C., 60. Such witness would have been competent to testify to "any substantive and independent fact" that was not "a communication or personal transaction" with the deceased, as, in *Gray v. Cooper,* 65 N. C., 183, that the deceased had possession and use of the slaves, or *(March v. Verble,* 79 N. C., 19) that the deceased had owned but one bull since the war, and his value, and the numerous cases which hold that an interested witness can prove the handwriting of the deceased, but not that she saw him sign the paper sued on. *Davidson v. Bardin,* 139 N. C., 2.

But had the evidence not been incompetent under Revisal, sec. 1631, it would have been irrelevant and its exclusion proper. Revisal, sec. 2117, provides: "Every woman whose husband shall abandon her or shall maliciously turn her out of doors shall be deemed a freetrader so far as to be competent to contract and be contracted with, and she shall have power to convey her personal estate and her real estate without the assent of her husband." This statute was held constitutional *(Hall v. Walker,* 118 N. C., 377) and has been cited as authority. *Brown v. Brown,* 121 N. C., 10; *Finger v. Hunter,* 130 N. C., 531; *Smith v. Bruton,* 137 N. C., 81. To constitute abandonment it is not necessary that the husband should leave the State. *Vandiford v. Humphrey,* 139 N. C., 65.

It is true that if husband and wife live separate by consent that is not abandonment. But the evidence here that the husband left his wife in 1883, never thereafter visited her or communicated with her, that she was without means of support and in great destitution, was compelled to mortgage her land, and that the husband in the meantime married and lived consecutively with two other women, fully established abandonment, which would in nowise be controverted by

showing that the day he left home his wife consented to his leaving and even gave him a horse to go. That would show that he did not abandon her that day. But his subsequent conduct—the long years of unbroken absence and silence, without any contribution to his wife's support in her great destitution, and his two subsequent marriages during her lifetime—unquestionably proves abandonment, full, complete and absolute, though it should be shown that the husband originally left home with his wife's consent. It does not appear whether there have been any criminal proceedings instituted for bigamy.

No Error.