MAGGIE L. BROWN, ADMX. OF DENIE T. BROWN, AND INDIVIDUALLY, v. J. E. S. ADAMS.

(Filed 7 November, 1917.)

**1. Evidence—Deceased Person—Transactions, etc.—Statute.**

Evidence of an interested party that deceased had agreed to devise and bequeath all of his property upon consideration of being taken care of during his life, and that the other party to the agreement, in rendering these services, was thereunder obligated to do so, is prohibited by Revisal, sec. 1631, relating to transactions and communications with deceased persons. There were also transactions and communications between the witness and the deceased, which were prohibited by the same section.

**2. Same—Interest—Conversations with Third Persons.**

Where the plaintiff, in her own right and as administratrix of her mother, seeks to recover upon an alleged contract made by her mother and another person, now deceased, under which her mother performed services to such other person under his agreement that he would devise and bequeath to her all of his property, it is incompetent for the plaintiff to testify to communications or transactions between her mother and such other person tending to establish her demand, for she is a party interested, within the contemplation of the statute (Revisal, 1631).

CLARK, C. J., dissenting.

CIVIL ACTION, tried before *Harding, J.,* and a jury, at May Term, 1917, of PITT.

*Albion Dunn and M. K. Blount for plaintiff.*
*W. F. Evans and Harding & Pierce for defendant.*

WALKER, J. This action was brought for the purpose of recovering the value of services performed in taking care of the defendant, J. E. S. Adams, in his old age and while he was feeble and infirm, upon the promise made by him at the time that he would leave to plaintiff's intestate, Denie T. Brown, and her children, plaintiff herself being one of them, all of his property, both real and personal, worth about $20,000.

Plaintiff sued as administratrix of her mother and in her own behalf, to recover whatever amount is due on account of the services rendered by them under the contract, and in order to establish her case she was permitted to testify, as a witness in her own behalf, to divers transactions and communications between her intestate and the defendant, since deceased.

When this case was argued before us we received the impression that the defendant had "first opened the door" in regard to the testimony of transactions and communications between the plaintiff's mother, Mrs. Denie T. Brown, and the original defendant, J. E. S. Adams. We find, upon further investigation, that such was not the case, but, on the contrary, that the plaintiff offered this testimony at the outset of the trial before the jury.

It will suffice to state, generally, that the testimony of the plaintiff herself related mostly to transactions and communications between her mother and intestate, Denie T. Brown, and the original defendant, J. E. S. Adams, who has since died. The defendant, Mary Adams, his sister, is his executor, and, as such, has been made a party to this action, in his place, as defendant. The plaintiff, a witness for herself individually and as administratrix, was permitted, under the examination of her counsel, to state very fully conversations and dealings between her mother and the defendants' testator, which, she alleged, occurred in her presence. That she is a deeply interested party and has a large interest in the result of this action, not the slightest doubt can be entertained. There was also testimony of the plaintiff, which was admitted over objection by defendant, and which related directly to a transaction or communication between the plaintiff herself and Mr. Adams. After giving a summary of the "actings and doings" of her mother and herself, on the one side, and Mr. Adams and his sister, Mary, in 1912, when the latter moved to Greenville for the purpose of taking up their residence, with them, where they were to receive the care and attention

described by her, certain questions were propounded to her, which, with the answers thereto, are as follows:

1. Question: "State whether you or your mother were under obligations to care for or attend to the wants and necessities of Mr. Adams." Answer: "Yes, sir; we were under obligations to take care and attend to him and help them, in sickness and in health."

2. Question: "State if you heard any conversation between Mr. Stanley Adams and your mother with reference to any consideration which he agreed to pay her in consequence of her waiting on and taking care of him." Answer: "Yes, he did say that he would make to her all his property."

3. Question: "Just state any conversation you may have heard between Mr. Adams and your mother relating to any compensation your mother was to receive." Answer: "He said he would give her the house and lot they now live in, and give her a deed of gift for it, to take place at his death; that pending the suit with Colin Tucker, he said it would not be any good to make anything then until that was settled, and then he would make a will to her, including that and everything else; that the conversation took place in our home." Witness further stated that they moved there then, and that his physical condition was bad, not being able to sit up; that Miss Mary's health was also bad.

4. Question: "Describe what attention and care, if any, your mother devoted to the comfort of Mr. Adams and Miss Mary." Answer: "She cooked for them, nursed them and sat up with them, read for them, and did everything that she could think of that would comfort him."

5. Question: "In consequence of that conversation, tell us what your mother did from 1912, when you say Mr. Adams and Miss Mary moved to Greenville." Answer: "In February, 1912, they moved in our home, on Church Street. Mama had attended to that. And they moved to our home and stayed there with us until some time in April, and during that time my mother cooked for them, carried meals to them, and made extra nourishment for them; and it was necessary to rub him with liniment, and that was done. In April they moved from mama's house to an adjoining house, and we moved with them. After we moved with them mama cooked for them and did as I have said. Mr. Adams' condition was such as to require a physician several times."

6. Question: "From your knowledge of what your mother did, the attentions paid to the old people that you have testified about, what, in your opinion, would be a reasonable compensation for her services?" Answer: "Three thousand dollars. I did not know about Mr. Adams leaving a will when he died. My mother was not paid anything for the services rendered."

7. Question: "How long did the care and attention your mother gave Mr. Adams and Miss Adams last?" Answer: "Up until the day she was taken sick, eight days before she died."

Other interested witnesses were allowed to be asked and to answer similar questions. These questions and answers were each duly objected to by the defendant, and the several objections were overruled. Defendant excepted, and from the verdict and judgment in favor of the plaintiff she appealed to this Court, and here insists that the evidence was incompetent, under Revisal, sec. 1631, and we agree with her that there was evidence which should have been excluded. Her counsel asked the witness and she was permitted to answer the first of the questions, which, for convenience, we have numbered. This answer clearly involved a personal transaction or communication between the plaintiff and Mr. Adams, who at the time of the trial was dead, the interests of those to whom his estate belongs under his will being defended by his executrix. This testimony should have been excluded, as its admission is expressly forbidden by the Revisal, sec. 1631, and this error, and the erroneous admission of other like testimony entitles the defendant to a new trial.

But if the other testimony of the plaintiff in regard to the transactions between her mother and Mr. Adams is to be considered, we are of opinion that it was likewise incompetent under the same section. The plaintiff relies upon *Ballard v. Ballard*, 75 N. C., 191; *Loftin v. Loftin*, 96 N. C., 99; *McCall v. Wilson*, 101 N. C., 600; *Bunn v. Todd*, 107 N. C., 266; *Johnson v. Cameron*, 136 N. C., 244. We will now consider these cases, and show that not one of them applies, but that each and all of them dealt with questions which are radically different. *Ballard v. Ballard, supra*, was one of the "proof of handwriting" cases, like *Peoples v. Maxwell*, 64 N. C., 313, which, as *Justice Bynum* stated, do not involve any personal transaction or communication, but may be based on knowledge acquired in quite a different way. Referring to *Peoples v. Maxwell, supra*, in *Ballard v. Ballard, supra*, he said: "In *Peoples v. Maxwell, supra*, it was held that, although it was competent for the plaintiff to prove the handwriting of the intestate of the defendant, it was incompetent for him to prove that he saw the intestate actually sign a particular paper. The distinction is, that handwriting is proved by a general knowledge of it, and the proof is abstract and is applicable to one case as it is to another. But proof by him that he saw the deceased sign a particular paper is proof of a transaction between him and the deceased. In our case, Wooten, the assignee, it is true, was not called to prove directly the assignment to him by the intestate, but he was called to prove, and did prove, that he saw J. Gooding 'sign his name as a witness to the endorsement of the intestate, Council Gooding.' The signature of the intestate was a cross-mark, incapable of identification and proof

without an attesting witness; whereupon the defendant Gooding was called in by the parties as this witness to the ceremony of transferring the bond from the intestate of Wooten. And now, Wooten, a party to that 'transaction,' is called to prove, and, under objection, does prove, all the facts necessary to make effectual this transaction between him and the intestate, to-wit, that he saw the defendant sign his name as a witness. He thus indirectly but conclusively testifies to a transaction between himself and a person since deceased. The case falls directly within the principle established in *Peoples v. Maxwell,* above cited, and *Whiteside v. Green,* 64 N. C., 307; *Murphy v. Ray,* 73 N. C., 588; *McCandless v. Reynolds,* 74 N. C., 301. The witness, Wooten, having endorsed the bond to the plaintiff with a guaranty, the result of this action, of course, can affect his interest or the interest previously owned by him. C. C. P., sec. 343. We are not disposed to relax the common-law rules of evidence beyond the innovations clearly established by the recent Legislature." We have quoted *Justice Bynum's* language some-what at length because it is very significant in this connection, and surely indicates with striking emphasis that an interested witness will not be allowed to testify *indirectly* to a transaction or communication with a deceased party which will affect his interest favorably in the event of the action, no more than he will be permitted to do so *directly,* provided his interest is adverse to that of such deceased party. Equally unfortunate to the plaintiff are the other citations. *Loftin v. Loftin, supra,* had nothing to do with a transaction or communication between the plaintiff, Mrs. Loftin, and the deceased party, to-wit, her father, but it was between her and a third party. *Justice Davis* said: "It was a substantive transaction, with no one now deceased, under whom she, or any of the parties to this action, derived any interest. It was a transaction with William Gooding alone. Loftin was not present; and the case of *Hallyburton v. Harshaw,* 65 N. C., 88, and *Ballard v. Ballard,* 75 N. C., 190, relied on by counsel for the defendant, are distinguishable from this, in that in *Hallyburton v. Harshaw* the communication, though not between the witness and Harshaw, the deceased testator, yet it was between Harshaw and Pearson (both of whom were dead) about the matter in dispute, and the witness and Harshaw had, by agreement, gone to Pearson to advise with him about it; so, in fact, the witness was the party really interested in the conversation between Harshaw and Pearson; and though the conversation was carried on by Harshaw and Pearson, the witness was present and, in fact, a party to it, as it related to advice given by Pearson, upon which they were to act." That case also favors the defendant's position, for there it is virtually said that the presence of the witness when the transaction or communication is had between the deceased and another party is sufficient to disqualify him,

especially when he has an interest in the event. It should be noted here that the plaintiff in this case, who testified, had a direct and important interest, besides being a party to the action, and that her mother was also interest, so that the heirs and distributees of Mr. Adams, who are represented by the defendant, his executor, have no one to testify in rebuttal of plaintiff's testimony. Said *Chief Justice Pearson,* in *McCanless v. Reynolds,* 74 N. C., 314: "Allowing a party to an action to give testimony in his own behalf is a wide departure from the rules of evidence at common law, and the proviso in section 343, which fixes a limit to this departure, should be construed liberally. The effect of it is to exclude one of the parties to a transaction who is afterwards a party to an action concerning the right or property involved in the transaction from the enabling clause of the statute, in the event of the death of the other party to the transaction. The proviso rests on the ground not merely that the dead man cannot have a fair showing, but upon the broader and more practical ground that the other party to the action has no chance, even by the oath of a relevant witness, to reply to the oath of the party to the action, if he be allowed to testify. The principle is, unless both parties to a transaction can be heard, on oath, a party to an action is not a competent witness in regard to the transaction." Could words be devised which more strongly condemn testimony of the kind here offered by the plaintiff, both upon principle and a sound construction of the statute? It shocks our ideas of fair play thus to place one of the parties at the mercy of the other by allowing one to speak in his own behalf, when he is under the power and influence of self-interest, by silencing the other, so that he cannot reply. This is an unjust advantage, not contemplated by the statute.

But continuing our examination of plaintiff's authorities. *McCall v. Wilson, supra,* only held that the evidence did not relate to a transaction or communication between the witness and a deceased person, under which the defendant claimed, but only to what she saw in her husband's hands. He was the only party concerned, and had no transaction or communication with any one. The case did not come within the terms of the statute, nor within its letter or spirit. There were no dealings between a party deceased and another person which was witnessed by a third and interested person who was the witness, as in our case. We may add that we do not see how the testimony in the *McCall case* was material or harmful to defendants. Their contention was that the deed from John E. Moore to Joseph McCall was void as against the deed from Moore's administrator to assignors of defendants for want of registration. *Justice Davis* says that was the only ground relied upon in the case. *Bunn v. Todd, supra,* involves no such question as we have here. The plaintiff and her mother, the witness, were each entitled to half of

the crop of plaintiff's father, the witness' husband, by separate and distinct rights. The witness claimed as his widow, and the plaintiff under a trust created by her grandfather, and it was proposed to prove by the writing the admissions of the deceased as to the trust. This was clearly competent, for there was no transaction or communication in which the witness could be interested, and the witness therefore had no interest in the event of the action, and she was not a party thereto. That case is valuable for its fine analysis of the statute into proper subdivisions by the present Chief Justice, which relieves it of much obscurity. But its facts do not bear any resemblance to our case. The Chief Justice makes this appear when he pointedly says: "She is not (1) a party to the suit, nor (2) is she shown to be interested in the event of the action, nor (3) does any person belonging to the above two classes claim title under or through her. That she had a claim to the part of the crop of her husband, other than that, the proceeds of which the plaintiff claims the deceased held in trust for her, does not disqualify," citing *Mull v. Martin,* 85 N. C., 406. We do not see what application *Lane v. Rogers, supra,* can possibly have to this case. The Court held there that the testimony was incompetent, but did say that the witness could have testified that she saw the intestate have the book on the day of her marriage, as this was no transaction or communication. The point was not in the case, and we merely repeat what was said therein to show that there was nothing in the statute that applied to those facts. It was like knowing a man's handwriting because the witness had often seen it. Besides, the witness had no interest in the result of the action, so far as appeared, and if she had, her evidence was against that interest, as she was testifying against the defendants, to whom she had conveyed her dower. So that case is not applicable. Here the witness testified to a transaction and communication between her mother and Mr. Adams, defendant's testator, while in that case the witness testified "abstractly" concerning a single individual fact which came within her vision.

The Court said in the *Ballard case, supra,* if the witness had said "I saw him sign the paper," or, in the *Lane case,* "I saw him pay for the deed and get it," it would be different and come within the statute as a transaction or communication. It will be found that all the cases cited by the plaintiff have this special feature of single action, and not joint action by the testator and another, and of a thing accomplished, and not one going on to completion. But more of this hereafter. *Judge Reade,* in *Hallyburton v. Dobson,* 65 N. C., 88, stated this question as a grave one, likely to arise in the future, and strongly intimated against the competency of the evidence under our statute.

The case of *Carroll v. Smith,* 163 N. C., 204, and *Zollicoffer v. Zollicoffer,* 168 N. C., 326, do not in the least conflict with our views. In

the first of these cases *Justice Allen* said: "The evidence of the widow was objected to, under section 1631 of the Revisal, but she did not testify to a communication or transaction with the deceased (*Johnson v. Cameron,* 136 N. C., 243), nor was her evidence against the personal representative of the deceased or against any one claiming under the deceased. *Bunn v. Todd,* 107 N. C., 267. She simply told what she saw, and against one claiming under Henry Carroll, and not under Albert Carroll." In the second of the cases the alleged transaction or communication was substantially admitted in the pleadings, and the witness, as in several of the cases already cited by us, "told only what he saw," viz., an endorsement on the paper signed by Mrs. Thomas, which was placed by her in the Bible. When the cases upon this subject are properly classified, they are easily reconciled.

There are several decisions by this Court, of comparatively recent date, which decide this very question against the competency of such evidence as was admitted in this case. It was held in *Wilson v. Featherstone,* 122 N. C., 749, and the Court squarely decided this point as indicated by us. The question there was: "Defendant Clara was asked by her counsel, 'State whether or not you heard a conversation between your father and J. E. Rankin, at the Battery Park Bank, in July, 1893, in regard to his bank deposit, and what disposition he had made of it.'" The question was excluded, and this Court affirmed the ruling unanimously, the Chief Justice saying: "One purpose of section 590 was to disqualify an interested party to testify to a conversation or transaction between the deceased and the witness, because there is no one to contradict the witness, and we think a true construction of that much-construed section excludes the evidence of a third party to such conversation, if the third party is interested in the result of the action, and there is no one to contradict the statement of the witness. Here Wilson is dead, Rankin is a party and incompetent, and the witness Clara is a defendant and claims the property through a gift of her deceased father. So she is interested, and there is no one else who can speak of the transaction or contradict the witness. In *Hallyburton v. Dobson,* 65 N. C., 88, this Court recognized the gravity of the question, but left it for 'future consideration.' In a later case the plaintiff's testator was a trustee of the slave in question for one Lloyd. In the course of the trial Lloyd was offered to prove a conversation between the plaintiff's testator (trustee for the witness) and the defendant's intestate. The court excluded Lloyd's evidence, as he was practically the plaintiff in the action. *Barlow v. Norfleet,* 72 N. C., 535." The same was the decision in *Witty v. Barham,* 147 N. C., 479, upon similar facts, and the identical question is precisely stated and tersely but unquestionably decided, the present Chief Justice writing the opinion: "The court also properly excluded

the testimony of one of the defendants, offered to prove that she heard the aforesaid conversation between her mother and said Charles G. Daniel, as that would be the 'indirect testimony of an interested witness as to a transaction or communication with the deceased.' *Stocks v. Cannon,* 139 N. C., 60. Such witness would have been competent to testify to 'any substantive and independent fact' that is not 'a communication or personal transaction' with the deceased, as, in *Gray v. Cooper,* 65 N. C., 183, that the deceased had possession and use of the slaves, or (*March v. Verble,* 79 N. C., 19) that the deceased had owned but one bull since the war, and his value, and the numerous cases which hold that an interested witness can prove the handwriting of the deceased, but not that she saw him sign the paper sued on," citing *Davidson v. Bardin,* 139 N. C., at p. 2.

We could not state the point more clearly, or by language set at rest more definitely, securely and permanently any controversy as to the incompetency of this testimony. It has the great merit of being the final word, strongly and unanswerably expressed upon a matter where there had been almost, but not entire, uniformity of decision, and must be so considered. But it has since been approved and adopted, without any question, by a unanimous Court, as decisive of the question, as closing the controversy, and as forever shutting the door against further discussion. To reopen it now would be regrettable and positively unwise, in view of the direct, consistent and final opinions of this Court so frequently expressed. We will show later that it is the just and correct decision and the proper and intended construction of the statute. We refer to *Harrell v. Hagan,* 150 N. C., 242, and *Grissom v. Grissom,* 170 N. C., 97 (opinion by *Justice Brown*), where *Witty v. Barham, supra,* was expressly approved, without any further discussion, as the settled law upon this subject. In *Grissom v. Grissom, supra,* at p. 99, *Justice Brown* says, quoting from *Harrell v. Hagan, supra:* "Whether the construction by the Court of Revisal, sec. 1631, is the correct one, it is useless for us now to discuss. The true meaning of the statute and of the intent of the Legislature have been settled by this Court in well-considered opinions, which we are not disposed to disturb." He also cites *Wilson v. Featherstone, supra,* and *Witty v. Barham, supra,* as finally settling the law. All of these cases were decided with the concurrence of all the members of the Court. If there has been any contrary expression of opinion by us in the less recent past, it has been superseded in our later decisions with unanimous approval. *Johnson v.*
thought then, and therefore concurred in the result. My opinion is the
*Cameron,* 136 N. C., 243, was correctly decided on other grounds, as I
same now.

The decisions in other jurisdictions are equally emphatic in the rejection of such evidence, the statutes being the same as ours, relating to *personal* transactions or communications. *Justice Brewer,* afterwards a member of the highest Federal Court for many years, and an eminent jurist, as shown by his long judicial career and his valuable services, said, in *Wills v. Wood,* 28 Kan., at p. 408, discussing a question similar to ours: "Mrs. Forbes, as well as Mrs. Maples, was plaintiff, each claiming as heir of Willis Wills, and each seeking to recover from the administratrix and heirs of David E. James. Neither could testify under the statute as to any transaction or communication had personally with David E. James. Can it be possible that when the two are present with James and a conversation is carried on, that while neither could testify as to what James said to herself personally, she could testify as to what he said to the other? We think not. Such a ruling would be forbidden by the spirit, at least, of the statute. That statute plainly contemplates preventing one party from introducing in evidence conversations had with the ancestor of the adverse party, and this because the lips of such ancestor, closed by death, cannot be heard to give his version of the conversation; and where there are two persons on the one side, having like interests, they should, for the purpose of giving force to the statute, be considered as one, and neither be permitted to give her version of the conversations and statements of the deceased to the other in her presence. Counsel for defendants, in their brief, well expose the injuctice of the ruling asked by plaintiff when they said: 'For instance, James might have conversed with the mother for five minutes about the bond, in the presence and hearing of the daughter, and then turned around and conversed with the daughter upon the same subject, in the presence and hearing of the mother; and while neither would be allowed to testify as to the conversation had with herself, either could testify as to the conversation heard by her between James and the other.' The ruling of the District Court was correct." And so, in *Dawson v. Waggaman,* 23 Dist. of Col. Appeal Cases, 428, it was said, at p. 434: "With reference to the second question—that is, whether the testimony of one of the defendants, Julia Dawson, was admissible to prove conversations between the deceased and the defendant, Charles E. Dawson—it is sufficient to say that chapter 1064 of the Code is too plain and explicit to allow of any controversy in this regard. The provision is a just one, and the testimony was properly excluded."

It was held in *Parks v. Caudle,* 58 Texas, 216, that "A party to a suit against heirs claiming the property through their deceased ancestor is precluded under Article 2248, R. C., not only from testifying to statements made to him by the deceased, and to transactions between the

deceased and himself, but also as to any such statements to or transactions between deceased and third persons; and this although occurring at a time when the witness had no interest in such statements or transactions."

In *Comstock v. Comstock*, 76 Minn., 396, it was held: "A party to an action, or interested in the result thereof, cannot give evidence as to conversations with a deceased person, even though the witness took no part in the conversation."

In *Tison v. Goss*, 102 S. W. Rep., 751, at p. 752, it was proposed by the plaintiff, heir of the deceased wife, to give evidence of a conversation between the wife and her husband tending to show that the husband bought property in dispute with money received from a sale of his wife's separate property, and the evidence was excluded as incompetent under their statute as to transactions, etc., of a deceased. But *Matthews v. Hoagland*, 48 N. J. Eq., 455, is like our case exactly in its facts. There it was held: "A party to a suit is not a competent witness, under the act of 1880, to testify adversely to another party suing in a representative capacity as to a transaction of the deceased with a person other than the witness, in which the witness and such person are interested, although such interests are divisible." Other cases to the same effect are *Holland v. Holland*, 98 Appellate Div. (N. Y.), 366; *Pederson v. Christofferson*, 97 Minn., 491.

In *Erwin v. Erwin*, 54 Hun. (N. Y.), 166, it appeared that a father told his son, in the presence and hearing of the latter's wife, that he gave him a certain tract of land, and the son assented to the gift. The wife said nothing. In an action against the deceased father's grantee to enforce performance of the contract it was held the wife was an incompetent witness to prove the contract, being virtually a party to the transaction.

The testimony of an interested witness, especially one who will be as greatly benefited by a recovery as the plaintiff in this case, concerning a transaction between the deceased and another interested party, would be practically the same as the latter's testimony as to the same transaction, with no opportunity to contradict it; and even if the person who had the transaction or communication were living, the representative of the deceased would be handicapped by the fact of her interest in the event of the action making her a hostile witness. The mere presence of the witness made her practically a party to the transaction or communication, and though passively so, yet with the same effect as if she had really and personally taken an active part in it. *Roberts v. Remy*, 56 Ohio St., at p. 255. A recovery in this case will inure almost directly to the plaintiff as next of kin to her mother.

We might cite many other cases to the same effect as those above named, but it is unnecessary to do so, as those already cited are quite sufficient to show the strong leaning of judicial opinion against the admissibility of this kind of testimony. All of the statutes on the subject in the States upon which we have drawn for authorities in support of this view of the law are substantially like ours, and some literally so.

We do not think that there is any force at all in the objection of plaintiff to the form of the exceptions, and assignments of error based upon them. They squarely raise the question we have discussed. It was not necessary to except to the answers separately, as they were directly responsive to the questions, to which the exceptions were properly taken.

There was error, we think, in the rulings of the court upon the objections to evidence, which entitle the defendant to a new trial of the issues.

New trial.

CLARK, C. J., dissenting: This action is brought by the plaintiff as executrix of her mother, Denie T. Brown, and by herself, individually, for services rendered decedent, J. E. S. Adams, who has died since this action was begun, and his executrix, Mary Adams, is substituted as party defendant.

The evidence of the plaintiff was that J. E. S. Adams was an old man and in poor health, living with his sister (now his executrix), who was also old and in bad health; that said Adams made a bargain with the plaintiff's mother that if they would live with them and take care of him and his sister he would leave to Denie Brown his property at his death. There was evidence that he made such will, but that after the death of Denie Brown he tore up said will, and this action is brought to recover value of the services rendered under said contract by plaintiff and her mother.

The first seven exceptions are to the admission of the testimony of the plaintiff, Maggie Brown, who testified as to the conversation between her mother and J. E. S. Adams in making the contract. The defendant contends that this evidence is incompetent, under section 1631 of the Revisal, because the plaintiff is interested as a party to the action and is testifying against the estate of one now deceased. The conversation, however, was not between the plaintiff witness and the decedent (the testator of the defendant), and the evidence was therefore competent.

In *Ballard v. Ballard,* 75 N. C., 191, *Bynum, J.,* says, in substance, that it is not by being a party to the action, or interested in the event, that one becomes disqualified; for, notwithstanding that fact, he is competent, except as to a transaction or communication *between such*

*witness and the person deceased.* This section is analyzed in *Bunn v. Todd,* 107 N. C., 266, where it is held that a person who is interested, or a party, is competent to testify against the estate of a person deceased, when the conversation or transaction is not between the witness and the deceased, but between the deceased and another party. The principle of the Code system is the general competency of testimony, though the witness is a party or interested in the event of the action, leaving its credibility to the jury, the only exception being where the witness is not only a party to the action or interested in its event, and is testifying in his own interest and against the interest of the person deceased, but, further, the testimony must be in regard to a transaction or communication between the witness and the person since deceased; otherwise, the testimony is competent. The provision being statutory, the court must observe it, and cannot exclude evidence except when authorized by its terms.

In *Johnson v. Cameron,* 136 N. C., 244, the exact point was discussed and decided, the Court saying: "The Code, sec. 590 (now Revisal, 1631), disqualifies a party to an action, or one interested in the event thereof, from testifying in his own interest against the person claiming adversely as to 'a personal transaction or communication *between the witness and the deceased person or lunatic,*' except when the executor of such opposing party or the testimony of the deceased person or lunatic is given in evidence concerning the same transaction or communication. But here the witness testified as to no transaction or communication between herself and W. M. Cameron. It was a transaction between W. M. Cameron and her husband, and as to that she was a competent witness, notwithstanding her interest. *Dobbins v· Osborne,* 67 N. C., 259; *McCall v. Wilson,* 101 N. C., 600; *Loftin v. Loftin,* 96 N. C., 99, are in point, as, also, *Ballard v. Ballard,* 75 N. C., 191 (quoting *Bynum, J., ut supra*)," and citing, further, *Peoples v. Maxwell,* 64 N. C., 313, where such witness was held competent to prove the handwriting of the deceased, and *Bright v. Marcom,* 121 N. C., 86, where an interested witness was allowed to prove the delivery of a deed between the deceased and another. *Lane v. Rogers,* 113 N. C., 171.

In *Hallyburton v. Dobson,* 65 N. C., 88, relied upon by the defendant, the point was not decided. *Johnson v. Cameron, supra,* has been cited since with approval by *Allen, J.,* in *Carroll v. Smith,* 163 N. C., 205, and by *Walker, J.,* in *Zollicoffer v. Zollicoffer,* 168 N. C., 329, who cited, also, the other cases above quoted. In *Wilson v. Featherstone,* 122 N. C., 749 (prior to *Johnson v. Cameron*), *Faircloth, C. J.,* seems to take a different view. But the statute is so plain that we cannot disregard it, and should hold that case an inadvertence, which we cannot approve.

While there has been some conflict in the past in our decisions on this point, it has been settled in accordance with the decision in *Johnson v. Cameron,* 136 N. C., 243, by the last two opinions in this Court, which have cited it with approval.

In *Carroll v. Smith,* 163 N. C., 205, *Allen, J.,* says: "The evidence of the widow was objected to, under section 1631 of the Revisal, but she did not testify to a communication of the transaction with the deceased. *Johnson v. Cameron,* 136 N. C., 243."

In *Zollicoffer v. Zollicoffer,* 168 N. C., 329, *Walker, J.,* says: "As to the question of evidence, we think the court confined the testimony of plaintiff, D. B. Zollicoffer, to what occurred between Mrs. Thomas and the defendant, E. T. Zollicoffer, and in this view there could be no valid objection to it, as the witness was not speaking of any communication or transaction between him and Mrs. Thomas, *but of one between her and a third party. Johnson v. Cameron,* 136 N. C., 243; *Bunn v. Todd,* 107 N. C., 266; *Dobbins v. Osborne,* 67 N. C., 259; *McCall v. Wilson,* 101 N. C., 600; *Loftin v. Loftin,* 96 N. C., 99; *Ballard v. Ballard,* 75 N. C., 191."

Besides, *Johnson v. Cameron,* thus approved to date, is in conformity with the exact language of Revisal, 1631 (*Bunn v. Todd,* 107 N. C., 266), and the statute should have precedence over any conflicting decisions.