ROY PRICE v. WALTER PYATT, ADMINISTRATOR.

(Filed 4 January, 1933.)

**1. Evidence D b—Testimony held incompetent under C. S., 1795.**

In an action to recover for services rendered deceased testimony by the plaintiff that the deceased lived with plaintiff, that plaintiff boarded him and took care of him for sixteen months, etc., is held incompetent under the provisions of C. S., 1795.

**2. Appeal and Error J e—Held, exceptions to testimony were not waived by testimony later entered without objection in this case.**

Exceptions were properly and aptly entered to the admission of testimony by plaintiff as to a transaction with a deceased relative to services rendered deceased by plaintiff. On redirect examination plaintiff testified without objection "I was living with deceased and fulfilled all agreements with him." *Held*, the plaintiff's statement on redirect examination was not sufficient to overthrow the exceptions theretofore entered.

APPEAL by defendant from *Sink, J.,* at July Term, 1932, of MC-DOWELL.

Civil action to recover for "board and washing, special nursing, care and keep" of J. T. Pyatt during sixteen months next immediately preceding his death.

From a verdict and judgment in favor of plaintiff for $400, the defendant appeals, assigning errors.

*J. Will Pless, Jr., and D. F. Giles for plaintiff.*
*Morgan & Gardner for defendant.*

STACY, C. J. The appeal presents the competency of plaintiff's testimony, admitted over objection, of which the following may be taken as

typical: "Mr. Pyatt lived with me 16 months prior to his death. . . . I boarded him, taken care of him during that time. . . . We prepared vegetables, cereals, and such foods as a sick person needed. . . . He got worse as he continued to live with me. I got $10 a month from him with which to pay his bills. . . . After my wife died, I arranged with my sister-in-law, who had been boarding with us for sometime, to care for Mr. Pyatt. He was living with me at the time of his death."

This evidence offends against C. S., 1795, which disqualifies a party or person interested in the event, or a person under whom such party or person interested derives his interest, from testifying as a witness in his own behalf against the executor, administrator or survivor of a deceased person, concerning a personal transaction or communication between the witness and the deceased, except where the executor, administrator or survivor, is examined in his own behalf, or the testimony of the deceased person is given in evidence concerning the same transaction or communication. *In re Will of Brown, ante,* 347.

Testimony of a similar nature was held incompetent in the following cases: *Pulliam v. Hege,* 192 N. C., 459, 135 S. E., 288 ("I had to wait on her; 'tote' meals to her"); *Knight v. Everett,* 152 N. C., 118, 67 S. E., 328 (Plaintiff, a physician, not competent to prove "that he attended the deceased; the number of visits made; had an account against him therefor; the amount due"); *Dunn v. Currie,* 141 N. C., 123, 53 S. E., 533 ("My family cultivated the land; took care of intestate's house and stock; nursed him in his last illness"); *Stocks v. Cannon,* 139 N. C., 60, 51 S. E., 802 ("I worked for the deceased on the road and in the field"); *Davis v. Evans,* 139 N. C., 440, 51 S. E., 956 (Plaintiff not permitted to testify "that he demanded payment of note from deceased in his life time"); *Davidson v. Bardin,* 139 N. C., 1, 51 S. E., 779 (*Feme* plaintiff "gave deceased medicine, kept him clean and cared for him generally; he was helpless; we had to do all the services and wait on him"); *Brown v. Adams,* 174 N. C., 490, 93 S. E., 989 ("Mother cooked for them, nursed them and sat up with them, read for them, and did everything she could think of that would comfort him"); *Witty v. Barham,* 147 N. C., 479, 61 S. E., 372 ("She told me she would give me a horse if I would leave and stay. I took the horse"); *Kirk v. Barnhart,* 74 N. C., 653 ("Mother was old and infirm; we moved to her home to aid in taking care of her and in nursing and supporting her"); *Blake v. Blake,* 120 N. C., 177, 26 S. E., 816 (Plaintiff and other heirs "agreed with mother (the deceased) that she was to take same interest in land purchased from Andrews that she had in the land they sold").

But it is contended that, on redirect examination, the plaintiff testified, without objection, "I was living with Mr. Pyatt and fulfilled all agreements with him," which rendered the admission of the previous incompetent evidence harmless as the facts thereby sought to be shown were otherwise fully established. As supporting this position, either directly or in tendency, the following authorities are cited: *Eaves v. Cox, ante,* 173, 165 S. E., 345; *Ingle v. Green,* 202 N. C., 116, 162 S. E., 476; *Shelton v. R. R.,* 193 N. C., 670, 139 S. E., 232; *Ledford v. Lumber Co.,* 183 N. C., 614, 112 S. E., 421; *Hamilton v. Lumber Co.,* 160 N. C., 47, 75 S. E., 1087; *Smith v. Moore,* 149 N. C., 185, 62 S. E., 892; *Blake v. Broughton,* 107 N. C., 220, 12 S. E., 127.

This more or less casual statement of plaintiff, made without objection on redirect examination, was neither intended nor sufficient to overthrow the 19 or 20 objections entered to his testimony during his examination in chief.

We are aware of the criticism leveled against this statute, C. S., 1795 as "a lingering remnant of a discredited antiquity" (North Carolina Law Review, December, 1932, p. 61), but it is the law as written, and we must enforce it.

New trial.