JOHN F. HOOKER and wife v. JOHN SUGG, Adm'r.

*Life Insurance Policy, Rules of Construction of—Constitution, Art.* 10, § 7.

1. A. insured his life for the benefit of "his wife and children." having, at the time the policy was issued, a wife and two children living. His wife died before he did: *Held*, that upon A.'s death the share that would have been his wife's went to her administrator, and the surplus of such share, after paying her debts, went to the administrator of A., and became liable to A.'s debts.

2. When A. insured his life for the benefit of "his wife and children," and at the time the policy was issued he had no wife, but did have two children, one of whom died before A.: *Held*, that upon A.'s death the money due on the policy should be divided between the surviving child and the administrator of the dead child. The insertion of "his wife" as a beneficiary, when he had no wife living, was a nullity.

3. A life policy creates a vested interest in the beneficiaries named in it. The contract may be annulled by the company for cause, but the disposal of the fund while the policy remains in force is not under the control of the insured. So far as it concedes a right of revocation in the party insuring, *Conigland* v. *Smith* is overruled.

4. The rules for interpreting a will may guide, as far as they are applicable, in ascertaining the legal effect of the clause in an insurance policy by which the beneficiaries are designated. The difference in the cases consists in the fact that the interest vests under the policy at once, upon its issue, while under a will the interest vests only at the death of the testator.

5. The Constitution, article 10, § 7,. clearly looks to the provision for the wife and children, so that they may not be left destitute by the death of an insolvent husband and father, and is personal to them when they survive.

6. A. had a life policy for the benefit of "his wife and children;" he surrendered it and took a paid-up policy for the benefit of the beneficiaries. After this he took out another policy in the same company for the benefit of "his wife and children." but when the last policy was issued his wife was dead: *Held*, that each policy was a complete contract in itself, and the last policy could not be construed as substitued for the surrendered policy, and the amount collected on it be divided accordingly.

CIVIL ACTION, tried before *Graves, J.*, at October Term, 1888, of GREENE Superior Court, upon a case agreed.

From the judgment rendered below, which is set out in the opinion, the defendant appealed.

The *feme* plaintiff is the daughter of J. T. Freeman. The defendant is the administrator of J. T. Freeman, of Leora Freeman, who was the wife of J. T. Freeman, and also of John H. Freeman, who was the son of J. T. Freeman.

The facts are stated in the opinion.

*Messrs. J. I. Jackson* and *Geo. V. Strong*, for the plaintiffs.
*Messrs. Theo. Edwards* and *G. M. Lindsey*, for the defendant.

SMITH, C. J.    J. T. Freeman, in the year 1867, obtained from the Ætna Life Insurance Company, of Hartford, in the State of Connecticut, a policy of insurance upon his life for the sum of five thousand dollars, to be paid at his death to "his wife and children," the premiums on which were to be paid annually, one-half in money and the other half secured by his note. At the time of the issue of the policy he had a wife, Leora, then living, and two children, their offspring, John H. Freeman, and E. Hokie Freeman, who intermarried with John F. Hooker.

After the death of the said Leora, some time in 1873, under an arrangement between the company and J. T. Freeman, the policy was surrendered to the company and a paid-up policy for the sum of three hundred and twenty dollars issued in its place, and in consideration of the premium theretofore paid, which sum was in like marner made payable to " his wife and children," without, as in the previous one, designating any one by name.

At the same time a second life policy was taken out, for the same sum and essentially in the same terms, payable, without naming them, to " his wife and children," differing from the former in requiring the annual premiums all to be paid in cash, the company having made this change, as to the payment of premiums, in the form of their life policies.

The son John H. died during the life-time of his father, leaving a will, in which he disposed of his whole estate, and the defendant John Sugg has taken out letters of administration with the will annexed on the testator's estate.

The *feme* plaintiff and her brother paid the premiums on the last policy up to the death of her brother, and herself alone the premiums thereafter to her father's death, in the sum of $297, and it is agreed that she shall be reimbursed out of the funds derived under that policy.

J. T. Freeman died in 1888, intestate, and letters of administration on his estate, as well as on his wife's, have also issued to the defendant. The company has paid both the sum agreed on in the paid-up policy and the entire amount due on the last policy, to the defendant, to be held subject to the rights of the parties therein. J. T. Freeman died largely indebted and insolvent, but there are no debts outstanding against the estate of his deceased wife Leora.

The foregoing facts are submitted to the Judge for his decision of the conflicting claims, asserted in the pleadings, to the fund, and it is agreed that if he shall sustain the plaintiffs' contention he shall enter judgment for one-half of the

$5,000, after deducting $297 due for premiums paid by her, which shall be added to the *feme* plaintiff's moiety of the residue ; if he shall rule in favor of the defendant, he shall enter judgment for the plaintiffs for one-third of the $5,000, reduced by the amount of the premiums so paid by the *feme* plaintiff.

Upon the hearing of the cause, was entered the following judgment:

" From the facts agreed upon and submitted by the parties in this action, the Court is of opinion, and so adjudges, that the plaintiffs are entitled to recover one-third of the three hundred and twenty dollars received by the defendant from the paid-up policy, and the defendant, as administrator of Leora Freeman, deceased, and as administrator with the will annexed of J. H. Freeman, deceased, is entitled to the other two-thirds of that sum.

" And the Court is further of the opinion, and so adjudges, that the plaintiffs, as agreed upon by the parties, are entitled : First, to be paid out of the five thousand dollars received by the defendant from the five-thousand-dollar policy, one-half of the amount of the premiums paid by the *feme* plaintiff on said policy, with interest on same from the time such premiums were paid ; second, are entitled to recover one-half of the remainder of said five thousand dollars.

"And the defendant, as administrator with the will annexed of J. H. Freeman, deceased, is entitled to the balance of said five thousand dollars.

" These plaintiffs will recover their costs in this action, to be taxed by the Clerk."

The premiums having been paid in equal parts by the daughter and son, up to his death, and by her alone since, in the several sums and at the several dates set out in the complaint, for which she is to be reimbursed those several sums, and not the half of each, as ruled by the Judge under a misapprehension of the terms of the concession, with interest on

separate portions, which make the aggregate of $297, must be allowed the *feme* plaintiff, and deducted from the full amount of the insurance. With this correction, there is no error in that part of the ruling.

The question as to the distribution of the sums paid upon the surrendered policy is not submitted to the Judge, and we suppose is not a subject of controversy, and consequently the ruling is confined to the distribution of the other fund. If the contention be sustained, that will entitle the wife to a share of it, as she would be if living at the time when that insurance was effected, it would go to her administrator, and the defendant being both her and her husband's representative, there being no debts of hers to be provided for, it would be held by the defendant in his latter capacity, and become liable to his debts.

The provision in the Constitution, article 10, section 7, which authorizes such an insurance for the benefit of the wife and children, not as yet regulated by statute, clearly looks to a provision for them, so that they may not be left destitute by the death of an insolvent husband and father, and is personal to them when they survive.

The defendant's counsel maintain the proposition that the substituted policy takes the place of the other, and inures to the advantage of the same beneficiaries as would the first have done if it had been kept up according to its terms, the effect of which would be to subject the wife's share, as suggested, to her husband's debts, a result which it was his intention to guard against, and yet this would have followed but for the renewal. The terms of the policy constitute a contract of the company to pay the specified amount to the beneficiaries designated, and create direct legal relations between them.

How could this be in regard to the wife, no longer living, and how can it be supposed that he intended to provide for her? The new policy supersedes, but does not continue in

force, that whose place it takes, and must be construed in accordance with the then existing conditions. Inadvertently, perhaps, but if inserted intentionally, the insertion of the wife as a beneficiary is a nullity, so far as it may have reference to the deceased, and could only have operation as a reference to one whom he might afterwards marry, and thus bring within the terms of the policy.

It is unnecessary to consider the possible effect of a future marriage upon the interests of the children, since the event did not take place.

There are but two aspects presented in the case before us, in the one of which the one-third lapses and returns to the husband as undisposed of, and in the other the entire sum belongs to the children, and we concur with the Court in the ruling in their favor.

In *Conigland* v. *Smith*, 79 N. C., 303, the relations of a parent, who insures his own life for the benefit of his children, to them, are deemed analogous to those assumed when providing for them by a testamentary disposition of his property, both being posthumous benefits secured, and hence the rules for interpreting the will of a testator may guide, as far as they are applicable, in ascertaining the legal effect of this clause in the policy. The difference in the cases consists in the fact that the interest vests under the policy at once upon its execution, while it does not under the will until the death of its maker, and hence we do not concur in the opinion delivered by RODMAN, J., so far as it concedes a power of revocation to reside in the party insuring. The contract may be annulled by the company in case of the failure of the other party to fulfil his contract stipulations, but the disposal of the fund while the policy remains in force is not under his control. Bliss Life Ins , 2 Ed., 517; *Fortescue* v. *Barnett*, 3 Myl. & R., 36; *Otis* v. *Beckwith*, 49th Ill., 121, and cases cited.

As the attempted securing a share to the deceased wife is nugatory and unavailing, there seems to be no alternative but to give the entire fund to the living daughter and administrator of the deceased son; for it is evident the entire sum was intended for none other, and being void as to one, the provision inures wholly to the others.

In case a legacy is given to a class of persons, as to tenants in common or to children, in the case of the death of one before the vesting, it inures to the survivors of the class. 2 William Ex'rs, 882; Toller Ex'rs, 303.

So, if *children* be designated in a life policy as beneficiaries, the interest *vesting at once* is in such as then meet the description, and is not divested in favor of survivors by a death afterwards.

We have not been able to find an adjudged case shedding light upon the construction of the like or similar words found in defining the parties for whose benefit a life policy has been taken out, but our conclusions seem to be a fair and reasonable interpretation of the clause before us, as it certainly subserves the ends that the father had in view in securing this fund to *his family*, constituted, in this case, of his son and daughter.

Subject to the correction which makes the advances of the daughter to be paid in full, and not a moiety only, the judgment is affirmed.

Modified and affirmed.