G. S. WATTS et al. v. W. A. WARREN. Adm'r et al.

*Assignment—Fraud—Creditors—Evidence—Practice—Administrator—Account and Settlement—The Code—Transactions with Deceased Persons.*

1. When the facts intended to be elicited by questions are not specifically set forth, still if the questions themselves suggest such facts with distinctness. their relevancy and materiality will be passed upon by this Court.

2. In an action by the creditors of an intestate against his administrator to compel an account and settlement of the estate, it was alleged that the transfer by the intestate, before his death, of a certain insurance policy to his brothers "for value received," was in fraud of creditors or, at most, was only intended to secure them for certain debts and the payment of premiums upon the policy—the fraud was denied and the assignment alleged to be in good faith without notice and for fair value : *Held*, it was competent to show what sums the intestate owed his said brothers for the purpose of sustaining the *bona fides* of the assignment.

3. The persons to whom the assignment was made were clearly incompetent to testify thereof under section 590 of *The Code*, but any other persons than those interested do not come within the inhibition of this section.

4. The mere fact of the *interest* of the witness does not exclude him from testifying of transactions with third persons which affect the *property* of the deceased.

5. The reason that evidence of "personal transactions" with a person since deceased is excluded, is that the mouth of such person is closed.

6. Transactions with third persons, even though they involve or throw light upon transactions with deceased persons, will not be excluded on the ground of interest under section 590 of *The Code*, because such third persons, being disinterested. may be called to contradict any mistatement.

This was a CIVIL ACTION, tried at October Term, 1890, of DURHAM Superior Court, before *MacRae, J.*

It appears that Julius B. Warren died intestate in the county of Durham in the month of June, 1889, and the defendant W. A. Warren duly became the administrator of his estate. This action is brought by the creditors of the intestate to compel the defendant administrator to an account of his administration, and to pay the creditors what may be payable to them respectively. The other defendants are brought into the action, to the end they may be concluded in respects not necessary to be particularly mentioned here.

In the life-time of this intestate he obtained from the Provident Savings Assurance Society of New York a policy of insurance on his own life, payable to him and for his own benefit, dated the 15th of March, 1888, for the sum of $15,000. On the 29th day of March, 1889, he assigned, transferred and delivered this policy of insurance to his two brothers, the defendants W. A. Warren and Frank Warren, "for value received." No particular consideration is recited.

At the time of the death of the intestate he was largely indebted to divers creditors, and it is alleged that the assets of his estate are insufficient to pay his debts and the costs of administration.

It is further alleged, among other things, that such assignment of the policy of insurance was made in fraud of, and to defraud, the creditors of the intestate, etc., and that, at most, such assignment was intended only to secure certain debts and the payment of premiums upon the policy as the same might come due, etc. The plaintiffs allege that the policy belongs to and constitutes part of the assets of the estate, and they demand judgment that it be so declared, etc. The defendants deny the alleged fraud, and aver that such assignment was made in good faith, and for a just and fair consideration, and they further contend that, at all events, they bought the insurance policy for a just consideration, in good faith and without knowledge or notice of any such fraudulent intent or purpose of the said intestate.

The Court submitted to the jury the following issues, and the jury responded to the same as indicated at the end of each:

. 1. Was the assignment by J. B. Warren to W. A. Warren and F. R. Warren absolute and for full value? Answer : No.

2. Was said assignment intended as a security for indebtedness of J. B. Warren as executor of his father's estate, or otherwise? Answer: No.

3. Was such assignment made simply as a security for premiums paid out and to be paid thereon by W. A. Warren and F. R. Warren? Answer: No.

4. Was said assignment made by J. B. Warren with intent to hinder, delay and defraud his creditors? Answer: Yes.

5. Did the defendants W. A. Warren and F. R. Warren have notice of such intent when the assignment was made? There was no response to this issue.

On the trial there was evidence tending to prove that the intestate and the defendant administrator were executors of their deceased father's will, and that the intestate in his lifetime had used very considerable sums of money—how much did not definitely appear—that belonged to legatees of the will, and that the defendant W. A. Warren had paid, and had to pay, the same, etc., and that such payments constituted part of the consideration paid by him for the policy of insurance.

The defendant administrator was examined as a witness in his own behalf, and his counsel, among others, put to him questions as follows:

" What payments have you made to other persons than J. B. Warren in consideration of that assignment?"

(Ex. 7 ) This was objected to by the plaintiffs, and, the objection being sustained, the defendants excepted.

Defendants' counsel asked:

"What sums of money have you paid out by reason of your liability as co-executor with J. B. Warren of F. L. Warren, deceased?"

(Ex. 8.) Objection by plaintiffs. Sustained, and defendants excepted.

The defendant F. R. Warren was also examined as a witness for the defendants, and, among others, this question was put to him: "State if you have made any payment—if so, to whom—on debts of J. B. Warren?"

(Ex. 12.) The plaintiffs objected, and, objection being sustained, the defendants excepted.

There were numerous other exceptions, but they need not be reported. The Court gave judgment, upon the verdict, for the plaintiffs, and the defendants thereupon appealed to this Court.

*Messrs. J. Parker, W. W. Fuller, F. L. Fuller* and *W. A. Guthrie,* for plaintiffs.

*Messrs. John W. Graham* and *James S. Manning,* for defendants.

MERRIMON, C. J.: Assignments of error upon the ground that evidence tendered on the trial was improperly rejected, should distinctly specify its relevancy and materiality. The Court must be able to see its nature and application with reasonable certainty. Otherwise, it cannot say that there is, or is not, error. The presumption is that the rulings of the Court are correct, until the contrary is made to appear in some appropriate way. *Whitesides* v. *Twitty,* 8 Ired., 431; *Knight* v. *Killebrew,* 86 N. C., 400; *Sumner* v. *Candler,* 92 N. C., 634.

Although the evidence which the defendants sought to elicit by the questions put to the witnesses in this case, and which the Court declined to allow them to answer, is not specifically set forth in the assignments of error, still we

think the questions themselves suggest with sufficient distinctness and certainty the nature, meaning, relevancy and materiality of the evidence proposed and rejected, as will presently appear.

The plaintiffs, creditors of the intestate of the defendant administrator, alleged that he assigned to the defedants, the Warrens, his brothers, the policy of insurance mentioned, in fraud of and to "hinder, delay and defraud his creditors"; and further, that if this was not so, then he assigned the same to them to the end they might pay the premiums that might, after the assignment, come due thereon, and, in the end, receive the money that might be paid in discharge of the policy and apply the same to reimburse themselves for such premiums as might be paid by them, and also to the payment and discharge of certain debts and liabilities of the intestate. This the defendants broadly denied, alleging, in in substance, that they bought the policy so assigned to them in good faith, paying therefor its fair value. They allege further that their brother, the intestate, was, in his life-time, the co-executor of the defendant W. A. Warren of the will of their deceased father; that the intestate, while so executor, took and used for his own purposes, large sums of money that belonged to his father's estate and were devoted by the will to the payment of legacies, etc., for all which the defendant W. A. Warren was liable and was bound to pay the same; that they had paid other debts for their said brother; that the aggregate of the sums of money they so paid, and others they were obliged to pay for the intestate, was intended to be, and was, a fair and just price for the policy of insurance so assigned to them, and that the intestate assigned the same to them in good faith for such consideration.

It hence behooved the defendants (the Warrens) to prove on the trial, and to produce competent evidence for that purpose, that the intestate owed them as alleged, and what sums of money, what premiums they so paid on account of the

policy of insurance, what of his debts they paid at his instance, and what sum or sums of money the defendant W. A. Warren had paid and was obliged to pay as such co-executor on account of the default of the intestate as one of the executors of his father's will. There was some evidence produced on the trial by the defendants tending to prove that such matters and things constituted the consideration for the assignment of the policy of insurance. There was likewise some evidence, in some aspects of the whole of the evidence produced, tending to prove that the assignment of the policy of insurance was made as a security for the reimbursement of the defendants (the Warrens) on account of premiums they might pay as required by the policy, and to pay certain debts and discharge certain liabilities of the intestate. Therefore the evidence proposed by the defendants, and which was rejected, tending to prove what sums of money the defendant W. A. Warren had paid on account of the default of his brother, the intestate, as executor of his father's will, was relevant and material, as was also the other evidence so proposed and rejected tending to show what debts of the intestate the defendants (the Warrens) had paid for him. Such evidence, if it had been received, would have tended, in some measure, to prove a consideration, and the amount thereof, for the assignment of the policy, and that the same was made in good faith and for a lawful purpose. Although it was not very direct, its pertinency and bearing favorable to the defendants were plainly to be seen, and, taken in connection with the whole evidence produced on the trial (very much of it indefinite and unsatisfactory), it might have materially changed the verdict of the jury as to one or more of the issues submitted to them. In any view of the case, the defendants were entitled to have the benefit of it.

It was insisted, however, that the evidence so rejected came within the inhibition of the statute (*The Code,* § 590), and

was not competent, because the witnesses were interested in the event of the action adversely to the deceased person, and the evidence it was proposed they should give was "concerning a personal transaction or communication between the witness and deceased person," the intestate named. We think this contention cannot be allowed to prevail.

The Court properly held that the witness W. A. Warren was not a competent witness to testify as to the contract of assignment of the policy of insurance and the consideration thereof agreed upon, because such testimony would clearly come within the inhibition of the statute just cited. But there was some evidence of the witnesses other than the defendants, the Warrens, whose proposed testimony was rejected, going to prove that the intestate made the assignment in question not for any fraudulent purpose, but for a valuable consideration, such as that above mentioned. The defendants, the Warrens, were not competent witnesses to testify as to the contract of assignment, because the deceased assignor could not testify in his own behalf and contradict them as to "a personal transaction or communication" between him and them. The obvious purpose of the statute is to prevent the surviving interested party, in such cases, from testifying as to such "personal transaction or communication" because the deceased party cannot.

The witnesses were not called upon to testify "concerning a personal transaction or communication" between them and the deceased person, their brother—they were asked to testify as to transactions and communications with persons other than the deceased, and as to which such third persons could testify, if need be. The statute does not, by its terms and purpose, prevent the surviving party from testifying concerning transactions and communications with third persons that may affect adversely the estate of the deceased person, or the rights of persons in and to the same. The questions put to the witnesses, which they were not

allowed to answer, obviously had reference to the pleadings, the issues and the contentions of the parties on trial. They were intended to elicit from the witness W. A. Warren, first, an account of what money he had paid to persons other than his brother, deceased, for and on account of the latter; and, secondly, what sums of money he had paid to third persons, and for which he was liable, on account of the default of his brother as executor of his father's will. The question put to F. R. Warren was intended to elicit from him an account of any sums of money he had paid "on debts" of his brother, deceased; and such evidence was intended to apply and have force on the trial in any pertinent aspect of the case. Such payments of money for the benefit of the deceased brother were not made to the latter, but to third persons, and he may, or may not, have had knowledge of the same; but, however this might be, the transactions and communications concerning the same were not with him. Nor was the purpose of the evidence to prove the contract of assignment of the policy of insurance, or "concerning a personal transaction or communication between the witness and the deceased person" about the same. The purpose was to prove the material facts and transactions distinctly with third persons, and to connect and apply them with other material facts and transactions by proper evidence for pertinent purposes on the trial. The evidence was material, not to prove the contract of assignment of the policy, but to prove distinct transactions with third persons—persons other than the deceased party—that grew out of and were, in a sense, a consequence of such contract. In view of the pleadings, the issues submitted to the jury, the contentions of the parties, and the whole of the evidence produced on the trial, upon which the evidence rejected might have had some material bearing favorable to the defendants, the latter evidence was relative, material and competent, and ought to have been received by the Court, unless the answers of the witnesses to

the questions put to them had, contrary to expectation, been irrelevant and not such as their nature and purpose suggested and implied. The following cited authorities are, more or less, in point here: *Whitesides* v. *Green,* 64 N. C., 307; *Thompson* v. *Humphrey,* 83 N. C., 416; *Lockhart* v. *Bell,* 90 N. C., 499; *Peacock* v. *Stott, id.,* 518; *Waddell* v. *Swann,* 91 N. C., 105; *Sikes* v. *Parker,* 95 N. C., 232; *Loftin* v. *Loftin,* 96 N. C., 94; *Carey* v. *Carey,* 104 N. C., 175; *Bunn* v. *Todd,* 107 N. C., 266.

There are numerous other assignments of error, but we do not deem it useful or necessary to advert to them, further than to say that most, if not all of them, cannot be sustained.

There is error. The defendants are entitled to a new trial, and we so adjudge. To that end let this opinion be certified to the Superior Court.

Error.