IN RE WILL OF D. B. BRADFORD.

(Filed 22 February, 1922.)

1. **Wills—Caveat—Marriage—Statutes—Undue Influence—Evidence.**

Our statute revokes any will made before marriage, and evidence that a will had been made prior thereto is not evidence of undue influence in the procurement of a subsequent will made in favor of the wife of the deceased. C. S., 4134.

2. **Wills—Caveat—Widow—Undue Influence—Evidence.**

Evidence that the widow left the State after the death of her husband, under whose will she was a beneficiary, does not tend to show undue influence on her part; and where the jury has accepted her explanation thereof, the caveators cannot successfully complain of prejudicial error.

3. **Evidence — Deceased Persons — Statutes— Wills—Undue Influence— Transactions and Communications.**

The wife may testify that she was not aware that her deceased husband had made a will until after his death, as substantive evidence, and it is not objectionable under our statute as being of a transaction with a deceased person. C. S., 1795.

4. **Same—Third Persons.**

Where the will of the deceased husband in favor of his wife is contested, she may testify as a substantive, independent fact, not prohibited by our statute, that excluding any dealings with her husband, she had nothing to do with his making the will, it being in effect that she did not procure it through third parties, though this may indirectly tend to prove a transaction with the deceased. C. S., 1795.

5. **Wills—Caveat—Undue Influence—Husband and Wife—Disparity in Ages—Intent.**

Great disparity of age between the deceased husband and his second wife, who benefited by his will, sought to be set aside for her undue influence, and declarations of the former deceased wife that in appreciation of the kindness of the propounder, whom he afterwards married, they desired to adopt her, or that after her apprehended death the husband should marry her, is not evidence that the second wife procured the will through undue influence.

**6. Wills—Husband and Wife—Undue Influence—Evidence.**

> The mere fact that the deceased husband had left a will bequeathing a large proportion of his estate to his wife, will not be considered as evidence that she exerted undue influence over him in the making of the will.

APPEAL by caveators from *Horton, J.,* at November Term, 1921, of PASQUOTANK.

D. B. Bradford died in Elizabeth City, November, 1918. His wife, aged 79, predeceased him in December, 1916, leaving no children. After his wife's death, he lived with his nephew, J. B. Griggs, but after a few months he married Minerva I. Cross, a trained nurse, aged 23. At his death, he left surviving him his widow, the propounder, Minerva I. Bradford; Dr. J. B. Griggs, J. B. Fearing, and Mary Whitehurst, children of two deceased sisters; and D. B. Fearing, Keith and Woodson Fearing, grandchildren of one of his deceased sisters, as his heirs at law. A year after his second marriage he executed this will, the principal bequests in which are that he bequeathed a fund to erect a handsome monument to the memory of his first wife, and $6,000 to the Episcopal Church towards building a parish house to the memory of said first wife and her mother; and gave to his nephews and nieces (together with previous property) $25,000. He also bequeathed $500 to the Masonic order, and the rest of his estate he bequeathed to his widow (naming the items), excepting certain valuable real estate, devised to his heirs at law and to the heirs of his first wife.

The only issue raised, and submitted to the jury upon the evidence, is the following: "Was the execution of the paper-writing purporting to be the last will and testament of D. B. Bradford as to the devises and bequests therein to Minerva I. Bradford procured by the fraud and undue influence of said Minerva I. Bradford, as alleged?" to which the jury responded, "No." Judgment accordingly; appeal by caveators.

*Aydlett & Simpson and Meekins & McMullan for caveators.*

*Thompson & Wilson, S. C. Bragaw, and Ehringhaus & Small for propounder.*

CLARK, C. J. There is no allegation of any undue influence as to any of the other devises and bequests in said will nor as to the mental capacity of the testator, the sole question raised by caveators, his heirs at law, being as to the undue influence alleged to have been exerted by his wife.

Our statute, C. S., 4134, revokes any will made prior to the marriage, and the testimony of the existence of such previous will cannot be therefore considered as evidence of undue influence. *Means v. Ury,* 141 N. C., 248.

Indeed, on a review of the evidence in this controversy, the judge might almost have been justified in directing the jury to find that there was no evidence of undue influence by the propounder. In this record there is no evidence that even a single time she ever mentioned the making of the will to him. The will was executed one year after his marriage to his second wife, and on the anniversary of their wedding, without any evidence of a knowledge thereof by her at the time of its being made. He died in November following.

The exceptions may be briefly considered: The first exception was to the court's refusal to admit the caveators to show that shortly after the death of her husband, Mrs. Bradford left Elizabeth City and has since resided in another state. She accounted for this, on cross-examination, by stating that shortly after her husband's death she received a telegram announcing her mother's death, and left to be with her father in New York City, and has been with him ever since, except in this trial and on occasional visits here. The caveators have had the benefit, if there was any, of the testimony which they sought to elicit.

The second exception is to the exclusion of testimony that the morning after her husband's funeral the widow, at that time in conversation with her brother-in-law, declined to be disturbed.

In response to an inquiry, Mrs. Bradford testified that "independent of any relationship with Mr. Bradford, she had nothing to do with preparing the will, and that the first time she even saw it was after his death." The question as asked and answered carefully excluded anything which grew out of any transaction between the testator and the witness. It was entirely competent for her to say that the first time she saw the will was after the death of her husband. This certainly was not a transaction with the deceased, and she could properly testify to this as a substantive independent fact. *Lane v. Rogers,* 113 N. C., 171, and citations thereto in the 2d Anno. Ed. It was an independent fact, which did not involve any dealing with her husband. *Watts v. Warren,* 108 N. C., 514.

Her statement that "excluding any relationship with Mr. Bradford (which means excluding any dealings with Mr. Bradford) she had nothing to do with preparing the will," was simply a declaration that she did not do this through third parties, and the authorities are uniform that a witness may testify to a substantive, independent fact, even though this may indirectly tend to prove a transaction with the deceased. *Grandy v. Sawyer,* 113 N. C., 42; *Cornelius v. Brawley,* 109 N. C., 542. In this latter case the widow and devisee proved the finding of the will among the valuable papers.

Besides this, the same witness testified to the same facts later without objection. Her testimony that after the testator's death "I did not go to the bank to get the will; I did not see it until after Mr. Bradford's death" was competent.

Exceptions 6 and 7 are to the testimony of Miss Edna F. Cox, a sister of Mrs. Bradford, to statements made by the first Mrs. Bradford in the presence and hearing of Mrs. Bradford regarding their wishes to adopt the propounder as their daughter in appreciation of kindness to them both, and that if that was not possible, that the propounder, after the wife's death (she being then in the hospital), should marry the testator. The caveators insist that (by reason of the disparity of their ages) the marriage between the propounder and the testator was an unnatural one, but this is not a proposition of law, and certainly, standing alone, as it did, it could not be considered as evidence of undue influence of the propounder in procuring the marriage, and, beyond question, it would not tend to show that by undue influence she procured the execution of this will a year after the marriage. The mere fact that a husband bequeaths, as in this case, a large proportion of his property to his wife is not evidence that she exerted undue influence in procurement of the same. *In re Peterson,* 136 N. C., 13; *In re Cooper,* 166 N. C., 210.

In this case the sanity and mental capacity of the testator are not denied; nor that he was an experienced and active business man; that every line of the will is in his own handwriting; that it was duly witnessed at his bank, and had been filed for months in his private deposit box in the bank, which he visited almost every day, and from which he had constant opportunity to remove and destroy it if so inclined.

After a full and careful scrutiny of the record and all the exceptions, we do not see that the caveators have been in any wise prejudiced in the conduct of the cause by any ruling of his Honor.

No error.