ARLENE H. HARRISON v. MATTIE F. WINSTEAD AND OCCIDENTAL LIFE INSURANCE COMPANY.

(Filed 4 November, 1959.)

**1. Evidence § 11:  Insurance § 24a—**

In an action by the person substituted as beneficiary in a policy of life insurance to recover the policy and proceeds as against the original beneficiary after the death of the insured, the original beneficiary is precluded by G.S. 8-51 from testifying to the effect that she had the policy in her possession and was holding same as security for a loan to insured and for premiums paid by her on the policy, since such testimony tends to establish an oral assignment of the policy to her as security, she being a party to the action and having a direct pecuniary interest in the outcome.

**2. Insurance § 24a—**

In the absence of the establishment of an enforceable contract between claimant and insured assigning the policy as security, the payment of premiums by claimant is alone insufficient to create a lien on the policy or its proceeds.

**3. Same—**

Where a policy of insurance provides that insured has a right to change the beneficiary without the consent of the beneficiary, the beneficiary has no interest in the contract during the life of the insured, but a mere expectancy.

HIGGINS, J., not sitting.

APPEAL by defendant from Mattie F. Winstead from *Paul, J.,* March Civil Term, 1959, of WILSON.

This action was instituted to obtain possession by Claim and Delivery of a policy of life insurance and to recover the death benefits payable thereunder. The plaintiff is the widow of the insured. The defendant appellant, Mattie F. Winstead, is the mother of the insured.

The policy in question, No. 91922, was issued by the defendant Occidental Life Insurance Company, in the face amount of $2,000, on the life of William R. Harrison. It is dated 3 October 1940. The mother of the insured was originally named beneficiary.

On 30 April 1947 the insured executed a written request to change

the beneficiary to his estate. This request was filed by the defendant Insurance Company but was not endorsed on the policy. On 11 July 1958 the insured executed another request to change the beneficiary to Mrs. William Roman Harrison (Arlene Hinnant Harrison), his wife. The defendant Insurance Company approved this change and waived presentation of the policy for endorsement.

The insured died on 17 July 1958. On 24 July 1958, his widow, Arlene H. Harrison, instituted this action for the recovery of the policy and its proceeds, which she claimed as beneficiary. The defendant Mattie F. Winstead in her answer asserted a counterclaim alleging that she held a lien on the policy for moneys loaned and premiums advanced and was entitled to have the proceeds of the policy applied to the satisfaction of her lien. By consent, the defendant Insurance Company paid the proceeds into the hands of the Clerk of the Superior Court pending the outcome of this action. Therefore, reference hereinafter made to the defendant shall mean Mattie F. Winstead.

At the trial below the court refused to permit the defendant to offer any evidence before the jury, either oral or documentary, concerning her payment of premiums to the defendant Insurance Company.

Upon conclusion of the evidence, the court granted the plaintiff's motion for nonsuit of the defendant's counterclaim, declined to submit issues tendered by the defendant as to the existence and amount of her lien, and peremptorily charged the jury to answer the issues in favor of the plaintiff.

From judgment on the verdict the defendant appeals, assigning error.

*Lamb, Lamb & Daughtridge for plaintiff.*
*Battle, Winslow Merrell, Scott & Wiley; Carr & Gibbons for defendant.*

DENNY, J. It appears from the proffered evidence that when the insured requested the insurer in April 1947 to change the beneficiary from his mother, Mrs. Mattie F. Winstead, to his estate, the Insurance Company wrote the defendant, who had possession of the policy, to send the policy in to the insurer in order that it might endorse the requested change of beneficiary thereon. The defendant did not comply with the request of the insurer, therefore, the Insurance Company waived this requirement and noted the change of beneficiary on its records. It followed the same procedure in July 1958 when it changed the beneficiary from the insured's estate to his wife, the plaintiff herein. There is no controversy about the insured having had full

authority to change the beneficiary in the policy without the consent of the original beneficiary.

The defendant offered in evidence a letter, identified by an officer of the Insurance Company, which she wrote to it in response to the above request in connection with the change of beneficiary in 1947. The letter stated, "I have in my possession policy No. 91922 on the life of William R. Harrison. I am beneficiary and have made all payments on this policy and I intend to protect my rights." On objection to the introduction of the letter, the objection was sustained, and the defendant excepted. In addition to the above letter, the defendant offered in support of her alleged counterclaim testimony to the effect that she had had possession of the insurance policy in question ever since it was issued, and that she had paid the premiums thereon; that the reason she had possession of the policy, it was held as security for a loan of $150.00 which she had made to the insured and for premiums she had paid. She offered canceled checks in evidence as proof of payment by her to the Insurance Company of the premiums on the policy, which payments, according to her proffered evidence, totaled $1,473.75; she further offered to testify that she was due interest on the premium payments of $829.38, or a grand total of $2,303.13. All of this evidence was excluded on plaintiff's objection and the defendant entered exceptions thereto.

In light of the proffered evidence, we must determine (1) whether or not the "dead man's statute," G.S. 8-51, precludes the defendant from testifying to an alleged assignment of the policy of insurance involved herein by the deceased insurer to her as security for an alleged loan made by the defendant to the deceased, and as security for the alleged repayment of premiums advanced by her; (2) if she is so precluded, whether or not evidence by the defendant to the effect that she retained possession of the insurance policy in question from its issuance until the death of the insured and paid all the premiums thereon, is sufficient to carry the case to the jury for its determination as to whether or not the defendant does have a lien on said policy and the proceeds payable thereunder.

We concede that the authorities in this country are in sharp conflict as to the rights of parties upon evidence similar to that revealed on the record before us. 122 A.L.R., Anno.—Competency of Witness —Insurance Proceeds, page 1300. However, it is our duty to determine the rights of the plaintiff and the defendant in this action in light of our own decisions bearing on the questions posed.

In the case of *Watts v. Warren*, 108 N.C. 514, 13 S.E. 232, the action was instituted by creditors of the intestate against his administrator and others. In the lifetime of the intestate, he obtained a

policy of insurance on his life, payable to him and for his own benefit, dated 15 March 1888, for the sum of $15,000. On 29 March 1889, he assigned, transferred and delivered this policy of insurance to his two brothers, the defendants W. A. and Frank Warren, "for value received." No particular consideration was recited. The estate of the intestate was insufficient to pay his debts and the costs of the administration. The Court said: "There was * * * some evidence * * * tending to prove that the assignment of the policy of insurance was made as a security for the reimbursement of the defendants (the Warrens) on account of premiums they might pay as required by the policy, and to pay certain debts and discharge certain liabilities of the intestate. Therefore, the evidence proposed by the defendants, and which was rejected, tending to prove what sums of money the defendant W. A. Warren had paid on account of the default of his brother, * * * was relevant and material, as was also the other evidence so proposed and rejected tending to show what debts of the intestate the defendants (the Warrens) had paid for him. Such evidence, if it had been received, would have tended, in some measure, to prove a consideration, and the amount thereof, for the assignment of the policy, and that the same was made in good faith and for a lawful purpose. * * *

"It was insisted, however, that the evidence so rejected came within the inhibition of the statute (The Code, sec. 590, now G.S. 8-51), and was not competent, because the witnesses were interested in the event of the action adversely to the deceased person, * * *.

"The court properly held that the witness W. A. Warren was not a competent witness to testify as to the contract of assignment of the policy of insurance and the consideration thereof agreed upon, because such testimony would clearly come within the inhibition of the statute just cited. But there is some evidence of the witnesses other than the defendants, the Warrens, whose proposed testimony was rejected, going to prove that the intestate made the assignment in question not for any fraudulent purpose, but for a valuable consideration, such as that above mentioned. The defendants, the Warrens, were not competent witnesses to testify as to the contract of assignments, because the deceased assignor could not testify in his own behalf and contradict them as to 'a personal transaction or communication' between him and them. The obvious purpose of the statute is to prevent the surviving interested party, in such cases, from testifying as to such 'personal transaction or communication' because the deceased party cannot." *Blake v. Blake,* 120 N.C. 177, 26 S.E. 816; *Bright v. Marcom,* 121 N.C. 86, 28 S.E. 60; *Wilson v. Featherston,* 122 N.C. 747, 30 S.E. 325; *Davidson v. Bardin,* 139 N.C. 1, 51

S.E. 779; *Brown v. Adams,* 174 N.C. 490, 93 S.E. 989; *Price v. Pyatt,* 203 N.C. 799, 167 S.E. 69; *Wilder v. Medlin,* 215 N.C. 542, 2 S.E. 2d 549; *Peek v. Shook,* 233 N.C. 259, 63 S.E. 2d 542; *Collins v. Covert,* 246 N.C. 303, 98 S.E. 2d 26.

In the instant case, the defendant undertook to testify in her own behalf as to why she had possession of the policy. She testified in the absence of the jury that she was holding the policy as security for a $150.00 loan and for the premiums she had paid. She was clearly incompetent to testify to any transaction between her and her son tending to show that he made an oral assignment of the policy to her as security for the $150.00 loan or as security for the repayment of the premiums paid by her to keep the policy in force. Furthermore, she is not only a party to the action, she has a direct pecuniary interest in the outcome of the litigation. *Cartwright v. Coppersmith,* 222 N.C. 573, 24 S.E. 2d 246. In fact, the defendant in her supplemental brief concedes that the provisions of G.S. 8-51 prevent her from proving an express contract creating a lien on the policy and its proceeds. This being true, she contends that the facts are sufficient to create an implied lien.

Under our decisions, it would seem that if the defendant had obtained a written assignment of the policy in language comparable to that contained in the assignment in the case of *Watts v. Warren, supra,* the evidence with respect to the payment of premiums to the insurance company would have been competent. *Hardison v. Gregory,* 242 N.C. 324, 88 S.E. 2d 96. In this jurisdiction, however, in the absence of an enforceable contract entered into between the defendant and the insured, the payment of premiums alone is insufficient to create a lien on the policy and its proceeds. *Sorrell v. Woodmen of the World,* 209 N.C. 226, 183 S.E. 400; *Pollock v. Household of Ruth,* 150 N.C. 211, 63 S.E. 940.

Where a policy of insurance provides that the insured has the right to change the beneficiary without the consent of the beneficiary, the beneficiary has no vested interest in the insurance contract during the life of the insured, but has a mere expectancy. *Sudan Temple v. Umphlett,* 246 N.C. 555, 99 S.E. 2d 791.

In *Pollock v. Household of Ruth, supra,* the brother and sister of the deceased had been originally designated as beneficiaries in the policy involved. They had paid a part of the premiums; the deceased had paid some of them, and the local lodge paid some of the premiums from funds allowed the deceased from sick benefits due her. About a week before her death, the insured caused the name of Katie Hardy to be substituted in the policy in place of the original beneficiaries. In upholding a judgment in favor of the substituted beneficiary, this

Court said: "There may be, and not infrequently are, facts and circumstances existing which would raise an equity in the original beneficiary and which would justify and require a court to interfere for his protection; but the authorities are very generally to the effect that the mere payment of the premiums and dues for a time, without more, and in the absence of a binding contract that the beneficiaries then designated should receive the proceeds of the policy or the benefits arising therefrom, would not support such a claim. Thus, in 29 Cyc., 128 - 129, the author says: 'An equity in favor of the original beneficiary precluding the substitution of another in his place may rest on a contract between him and the member, based on a sufficient consideration, by which he is to receive the benefits. Thus, if a member designates a beneficiary or, having designated a beneficiary, delivers the certificate to him, on an agreement that he shall receive the benefits in consideration of past advances made by him, or present or future advances, or in consideration of his promise to pay dues and assessments, which promise is fulfilled, the member can not thereafter substitute a different person as beneficiary. However, the fact that the person originally designated incurs expenses with reference to the transaction on the faith of the designation, as by paying dues and assessments to keep the certificate alive, does not prevent the substitution of a new beneficiary in his place, in the absence of a contract that he is to receive the benefits, nor does the fact that the member delivers the certificate to the beneficiary as a gift preclude him from subsequently substituting a new beneficiary.'

"An application of the principles stated fully justifies the court in entering judgment of nonsuit. There is no provision of law, general or special, and no rule of the company or stipulation of the policy which forbids the change that was made in the present case; and there are no facts or circumstances which show that the payments by the original beneficiaries were made under any contract or agreement with the insured that would give plaintiffs any right to the relief which they seek."

Likewise, in the case of *Sorrell v. Woodmen of the World, supra,* the original certificate of insurance on the life of Albert V. Sorrell, was issued on 27 March 1913. Quinnette Sorrell, wife of Albert V. Sorrell, was designated as beneficiary in the original certificate. Sometime after the issuance of the original certificate, the insured stopped paying the dues and assessments required to keep said certificate in force. Thereupon, Quinnette Sorrell, as the beneficiary, paid the dues and assessments until the certificate was exchanged for a new certificate on 1 June 1929. She continued to pay all the dues and assessments required to keep the new certificate in force, until her death on 11

September 1933. The sums paid by Quinnette Sorrell amounted to more than $459.00. At her death she left a will bequeathing to her nephew, J. Bostwick Cooke, all her personal property, including this insurance policy. Thereafter, until the death of the insured, the nephew paid all the dues and assessments required to keep the insurance in force.

After the death of Quinnette Sorrell no other beneficiary was designated. There was a provision in the policy as follows: " * * * if there be no surviving wife, children, or adopted children (and there were none), such benefits shall be paid to the next living relative" in the order named therein. It so happened that the nearest relative of the insured was his brother, the plaintiff Quint L. Sorrell. Judgment was entered awarding the plaintiff the entire proceeds from the certificate of insurance in the sum of $667.57. On appeal to this Court, *Connor, J.,* speaking for the Court, said: "The defendant J. Bostwick Cooke * * * is not entitled to the sum due on the certificate, or to any part of said sum. He claims under the last will and testament of Quinnette Sorrell, deceased, who was the beneficiary designated in the certificate prior to her death. At no time during her life did she have any vested interest in the certificate which she could bequeath by her last will and testament. * * *

"Neither Quinnette Sorrell nor the defendant J. Bostwick Cooke had any lien on the certificate or on the sum due on the certificate, for the sums paid by them as dues and assessments required to keep the certificate in force."

The appellant herein cites *Hooker v. Sugg,* 102 N.C. 115, 8 S.E. 919, as authority to the effect that where one of several beneficiaries has paid premiums on a life insurance policy, that person is entitled to be repaid the full amount of the premiums paid by him from the proceeds of the policy. We do not interpret the opinion in this case to hold that the payment of premiums in the absence of a contract would entitle the one who paid the premiums to recover the sums paid out of the proceeds of the policy. It appears that the *feme* plaintiff and her brother paid the premiums on the policy from the time it was issued until the death of her brother during the lifetime of their father. Thereafter, the *feme* plaintiff paid all premiums on this policy until the death of her father, the insured. Another policy had been paid up on the life of her father, details of which are not pertinent here. It does not appear that the provisions of G.S. 8-51 were involved or that the *feme* plaintiff claimed a lien on the proceeds of policy for the sums she had paid to keep the policy in force. The case was heard on an agreed statement of facts. The opinion simply states: "The *feme* plaintiff and her brother paid the premiums on the last policy

up to the death of her brother, and herself alone the premiums thereafter to her father's death, in the sum of $297, and it was agreed that she shall be reimbursed out of the funds derived under that policy." We do not construe this case as controlling in any respect on the facts in the present case.

In light of our decisions and the facts disclosed on the present record, we are of the opinion that the court below properly excluded the evidence which is made the basis of several of the defendant's assignments of error. It must be conceded that the failure of the defendant to have a valid and enforceable contract with her son, with respect to the payment of premiums on the policy of insurance involved, has resulted in a serious and unfortunate loss to her. Even so, the judgment as of nonsuit on the defendant's counterclaim will be upheld, and in the trial of the plaintiff's cause of action no prejudicial error has been shown that would justify a new trial.

No error.

HIGGINS, J., not sitting.